**FRY et al. v. JACKSON et al.   (No. 11029.)**

(Court of Civil Appeals of Texas. Fort Worth. May 31, 1924. Rehearing Denied June 28, 1924.)

**1. Injunction ⊕⊃135—Issuance of temporary injunction largely discretionary.**

Issuance of temporary injunction is largely matter of legal discretion.

**2. Injunction ⊕⊃137(4)—Not sustained if based on mere conjectures or apprehensions of loss or injury.**

Temporary injunction, based on mere conjectures or apprehensions of loss or injury, will not be sustained.

**3. Injunction ⊕⊃161—Dissolution in exercise of discretion authorized by verified specific denial of material allegations of petition.**

Duly verified specific denial of material allegations of petition for temporary injunction authorizes dissolution thereof, in exercise of judicial discretion.

**4. Injunction ⊕⊃12—Injury so threatening and certain as to justly arouse fear of applicant for relief sufficient.**

Equity does not require that applicant for injunctive relief delay until injury is done; it being necessary only that impending injury be reasonably so threatening and certain as to justly arouse fear of applicant.

**5. Injunction ⊕⊃144—Allegations as to facts showing intent to establish reservoir and divert state highway held to authorize injunction.**

Allegations of formal agreement between county commissioners' court and city board of commissioners to divert state highway, in case of establishment of reservoir at certain point, city's expenditure of large sums for options to purchase lands to be covered by reservoir, and other actions manifesting purpose, which was not clearly denied, to locate reservoir at such place, *held* to authorize temporary injunction against construction thereof.

**6. Eminent domain ⊕⊃47(6)—City held authorized to condemn land constituting part of state highway for establishment of reservoir.**

City of Dallas *held* authorized, by charter and statutes, in exercise of power of eminent domain, to condemn property necessary for establishment of reservoir and water system, though necessitating taking and submerging of part of state highway; state, as sovereign power, having full power and control, directly or through agencies, of its public roads.

**7. Eminent domain ⊕⊃274(1)—Owners of land abutting on part of state highway not taken for construction of reservoir cannot sue to enjoin taking of part affected.**

Limitation of power of eminent domain by Const. art. 1, § 17, prohibiting taking of property for public use without adequate compensation, does not authorize injunction against taking of land, constituting part of state highway, for construction of reservoir, at suit of owners of land abutting on parts of road not taken; their remedy being action for damages.

**8. Highways ⊕⊃72(1)—Threatened change in course of state highway by county commissioners' court not enjoined for want of application and notice.**

County commissioners' court will not be enjoined from changing course of highway established under Complete Tex. St. 1920, art. 6863, or Vernon's Sayles' Ann. Civ. St. 1914, art. 6863, and hence constituting public road (article 6859), on ground that no application

or notice of change has been made, as required by articles 6875, 6876, 6885; as court will not assume that commissioners, if they conclude to change course in full compliance with such articles and articles 6860, 6861, will do so without proper application and notice.

**9. Appeal and error ⊚⟿916(1)—Defendant's allegations as to disputed matter adopted on appeal from dissolution of temporary injunction.**

On appeal from order dissolving temporary injunction against construction of reservoir and resulting change in course of state highway, court -must adopt defendant's allegations as to signature of agreement between counties by all members of commissioners' courts, and assume that final order or determination will only be on their unanimous consent, as required by Complete Tex. St. 1920, art. 6861, or Vernon's Sayles' Ann. Civ. St. 1914, art. 6861.

**10. Highways ⊚⟿72(1)—Commissioners' court's final conclusion as to change in course of state highway not set aside, except on finding that it was corruptly or arbitrarily done.**

Neither district court nor Court of Civil Appeals may substitute its judgment for that of county commissioners' court, or otherwise set aside latter's final conclusion, in respect to change in course of state highway, as authorized by Complete Tex. St. 1920, art. 6861, or Vernon's Sayles' Ann. Civ. St. 1914, art. 6861, except on finding that it was corruptly or arbitrarily done.

**11. Eminent domain ⊚⟿47(6)—City and county commissioners' court held authorized to change course of public highway for construction of reservoir.**

In view of Dallas amended charter, § 5c, adopted under authority of Const. art. 11, § 5, in accordance with Home Rule Bill (Complete Tex. St. 1920, arts. 1096a, 1096b, or Vernon's Sayles' Ann. Civ. St. 1914, arts. 1096a, 1096b) Acts 38th Leg. (1923) c. 18, §§ 3, 4, and Acts 35th Leg. (1917) c. 88, § 76 (Vernon's Ann. Civ. St. Supp. 1918, art. 5006), such city and county commissioners' court may establish reservoir, if public necessity is determined in good faith to be sufficiently great, though section of state highway is taken and submerged, restriction of power of commissioners' court in article 6861, or Vernon's Sayles' Ann. Civ. St. 1914, art. 6861, incorporated within powers of city by recent legislation.

**12. Eminent domain ⊚⟿47(1)—Taking of property devoted to public use for another such use may be justified by greater or more general public interest.**

Departure from general rule that public use may not be entirely destroyed by taking property devoted thereto for another public use may be justified by greater or more general public interest.

**13. Statutes ⊚⟿109—Details and machinery for effectuating object of bill need not be expressed in title.**

Const. art. 3, § 35, merely requires that subject of act be expressed in title or caption, and not that details and machinery for effectually aiding object of bill be so expressed.

**14. Statutes ⊚⟿123(4)—Act authorizing change in course of state highway on land necessary for reservoir held not invalid as not embraced in title.**

Acts 35th Leg. (1917) c. 88, § 76 (Vernon's Ann. Civ. St. Supp. 1918, art. 5006), authorizing county commissioners' court to change public road on land necessary for construction of reservoirs, etc., *held* not so foreign to general subject specified in caption as to invalidate it; authority to establish reservoirs for irrigation purposes implying power to lawfully acquire property necessary to impound them.

**15. Constitutional law ⊚⟿48 — Statutes construed to sustain them, if reasonably possible.**

Statutes should be so construed as to sustain them, if reasonably possible.

**16. Highways ⊚⟿72(1)—Pleadings in suit to enjoin change in course of state highway by construction of reservoir held insufficient to present questions as to certain details.**

Pleadings in suit to enjoin construction of reservoir and resulting change in course of state highway *held* insufficient to enable court to determine practicability of locating reservoir at different place, or whether causeway should be constructed over submerged part of road, so as not to impair plaintiffs' privileges.

Appeal from District Court, Denton County; C. R. Pearman, Judge.

Suit by W. E. Fry and others against Brent C. Jackson and others. From judgment dissolving temporary injunction, plaintiffs Fry and others appeal. Affirmed.

Robert H. Hopkins, of Denton, and Cecil H. Smith, of Sherman, for appellants.

Jas. J. Collins and Allen Charlton, both of Dallas, and Sullivan, Speer & Minor, of Denton, for appellees.

CONNER, C. J. The following statement from appellees' brief, we think, will sufficiently indicate the issues in this case, to wit:

"W. E. Fry, C. L. Bumpas, Peter Clark, R. D. Sims, A. W. Martin, Luther McReynolds, J. W. Shafer, Iva Button and husband, G. M. Button, all residents of Denton county, Tex., and W. A. Brooks of Kaufman county, Tex., as plaintiffs, instituted this suit in the district court of Denton county, Tex., seeking to enjoin the commissioners' court of Denton county, and the members thereof, the state highway commission and the members thereof, the city of Dallas, its board of commissioners, and the members thereof, all as defendants, from constructing a dam on Elm Fork of the Trinity river in Denton county, at a point near Garza, Tex., where same would cause the flooding of a portion of state Highway No. 39, the public road between McKinney and Denton, and from in anyway changing the course of said road so as to accommodate said reservoir of water, and from in any way interfering with such road.

"The plaintiffs based their suit on the allegations that each of them owned land east of

Denton and east of a proposed reservoir to be located by the city of Dallas on Elm Fork of the Trinity river so as to extend from a point near Garza for several miles north and inundating about 12,000 acres of land; that the reservoir would flood and inundate the road known and designated as state Highway No. 39 for a distance of several miles; that plaintiffs' property abutted on said road which was used by plaintiffs and their tenants in connection with their property as a means of access to and from Denton, Tex., and that the flooding of the same would specially and irreparably injure the property of plaintiffs; that the city of Dallas, the state highway commission, and the commissioners' court of Denton county were together planning to divert said Highway No. 39 around said reservoir; that said diversion would make the road from plaintiff's property to Denton about six miles longer, and would result in special and irreparable injury to the plaintiffs and their property; that neither the commissioners' court, state highway commission, nor the city of Dallas has the power to alter said road or to flood the same for· said purpose.

"Each of the defendants appeared and pleaded that no final official action had been taken by their respective bodies concerning the location of the reservoir or the changing or altering of the road complained against by the said plaintiffs; that under the provisions of the Dallas city charter, as well as under the terms of the state law, the city of Dallas had the power, whenever it determined to do so, to cause said highway to be changed for the purpose of carrying out its waterworks improvement and locating the reservoir; that it was further pleaded by the appellees that, in view of the state law, and more particularly section 20 of chapter 75 of the recent act of the Thirty-Eighth Legislature conferring jurisdiction over state highways upon the highway commission, it became necessary to have the highway commission to concur in any change or alteration that might be required to be made in the Denton-McKinney Highway, or what is commonly known as state Highway No. 39.

"The appellees (defendants below) further pleaded that the law empowering the city to locate the reservoir and providing for the altering of roads in the reservoir site to accommodate the reservoir, and set up that the defendants had not departed from the procedure provided, and had not exceeded the powers granted by law, but were merely negotiating as to the location of the reservoir, and that they would follow the powers conferred should they proceed to change or in any way interfere with Highway No. 39.

"The city of Dallas specially pleaded the great necessity for the securing of an adequate water supply for its present and future needs; that it now has about 235,000 people and is rapidly growing; that it has voted $5,000,000 in bonds to secure a reservoir, and is now seeking a proper location, and is investigating the feasibility and availability of the reservoir in Denton county; that it has secured options on about 6,500 acres of land on said site, and has employed engineers to examine same and is negotiating with the county commissioners as to the relocation of a portion of Highway No. 39; that in the event the site proves to be avail-

able, feasible, etc., the road will be relocated to the north of the reservoir, and will be 3⁹/₁₀ miles longer, and a southern route will also be furnished; that all the costs of same will be borne by the city of Dallas; that any damage suffered by the plaintiffs can be fully compensated at law; that the law procedure will be observed, etc.

"The plaintiffs filed amended and supplemental pleadings, the substance of which has already been set out.

"The case was heard in the lower court on motion to dissolve, and, after hearing the pleadings and demurrers, the lower court dissolved the injunction, and appeal was perfected by the plaintiffs Fry, Bumpas, Button, and Brooks; all other plaintiffs failing to become parties to the appeal bond."

[1, 2] Among other contentions it is vigorously insisted in behalf of appellees that the dissolution of the injunction was authorized, if for no other reason than because the suit is premature. There can be no doubt of the legal proposition that it is largely a matter of legal discretion whether a temporary writ of injunction will be issued and one will not be sustained when based upon mere conjectures or apprehensions of loss or injury. See Kerr v. Riddle (Tex. Civ. App.) 31 S. W. 328; Browning v. Hinerman (Tex. Civ. App.) 224 S. W. 236; Page v. Tucker (Tex. Civ. App.) 218 S. W. 584; Ruling Case Law, p. 321, § 20.

[3-5] It is also true that a specific denial of material allegations of a petition for a temporary writ of injunction, when duly verified, will authorize the court in its judicial discretion to dissolve it. See Couchman v. City of Dallas (Tex. Civ. App.) 249 S. W. 234; Oil Corporation v. Waggoner (Tex. Civ. App.) 224 S. W. 230; Page v. Tucker (Tex. Civ. App.) 218 S. W. 584; Browning v. Hinerman (Tex. Civ. App.) 224 S. W. 236. Among other allegations of defendants' verified answer we find the following:

"Defendants specially deny that the city of Dallas or its officers, or any of its codefendants, have yet determined upon the location of the said reservoir, or have as yet determined upon the changing or alteration of the said road as alleged by the said plaintiffs in the manner so alleged by the said plaintiffs or in any other manner."

We would, therefore, perhaps be justified in affirming the judgment on the ground that the threatened injuries to appellants are not so certain in view of appellees' answer as to require this court to disturb the action of the trial court. Appellants, however, allege that the commissioners' court of Denton county and the board of commissioners of the city of Dallas have entered into a formal agreement to the effect that, in event the reservoir is located and established at the point in controversy, state Highway No. 39 shall, at the cost of the city, be diverted and changed so as to extend around the upper point of the

reservoir, and these allegations are not denied. It further appears from appellees' answer that the city of Dallas has already expended several thousand dollars in securing options for the purchase of lands that would be covered by the waters of the lake and taken other action tending to manifest a purpose to locate and establish a reservoir at the place in controversy, and the intent to do so is not clearly denied. Equity does not require that an applicant for relief shall delay until after the injury is done. It is only necessary that the impending injury is reasonably so threatening and certain as to justly arouse the fear of the applicant for injunctive relief. See Wright v. Allen (Tex. Civ. App.) 257 S. W. 986. We accordingly conclude to overrule the contention that the judgment be affirmed on the ground that the appellants' suit is premature. We are the more inclined to 'this conclusion, inasmuch as it is manifestly to the interest of all parties, particularly of the appellee city, to have the case decided upon its merits.

[6] We will accordingly proceed to consider the vital question of whether, for the purpose declared, appellees acting together have the power to take and submerge such part of state Highway No. 39 in Denton county as shall be necessary under the approved plans and specifications of the city of Dallas, for the establishment of the proposed reservoir and water system.

We are of opinion that the question must be answered in the affirmative. It is undisputed that the city of Dallas is a municipal corporation, acting under a special charter not assailed, and having a population of over 200,000 inhabitants to supply whom, and for other municipal purposes, it is necessary to provide large quantities of water; and, as will be seen later, by its charter, as well as legislative acts, may provide and own, for the purposes indicated, reservoirs and other necessaries of a complete water system. To this end it is as it must be conceded that the city has the power in the exercise of eminent domain, to condemn property in the manner provided by law. The only limitation to such power urged in behalf of appellants as insisted is that the power of condemnation does not extend to public property already devoted to a public use. In support of the distinction suggested appellants present an interesting argument manifesting a painstaking research of the authorities and supported by such cases as Lamar Co. v. Cleménts, 49 Tex. 348; City of Llano v. Llano Co., 5 Tex. Civ. App. 132, 23 S. W. 1008; State v. Travis Co., 85 Tex. 441, 21 S. W. 1029; O'Neal v. Sherman, 77 Tex. 184, 14 S. W. 31, 19 Am. St. Rep. 743—and other cases that we will not stop to distinguish or discuss, for the reason that we think the limitation immaterial in this case. For it is undoubtedly true, and the able counsel for appellants so concede, in effect, that the state, as the sovereign power, has full power and control, either direct or through agencies, of its public roads. See Travis Co. v. Trogdon, 88 Tex. 302, 31 S. W. 358; S. & E. T. Ry. v. G. & I. Ry., 92 Tex. 162, 46 S. W. 784; Imperial I. Co. v. Jayne, 104 Tex. 406, 138 S. W. 575, Ann. Cas. 1914B, 322; and State of Georgia v. City of Chattanooga, 44 Sup. Ct. 369, 68 L. Ed. ——, by the Supreme Court of the United States.

In Travis Co. v. Trogdon, supra, it is said:

"It is one of the functions of government to establish and maintain public roads, and no matter through what agency such function is exercised, the roads are the property of and for the use of the state, which, through its Legislature, has absolute control over same, which control it may or may not, from time to time, delegate to the local authorities."

[7] In the opinion of the United States Supreme Court, above referred to, it is said with many citations of authority that "the power of eminent domain is an attribute of sovereignty, and inheres in every independent state." In this connection it will be well to observe that in this case the limitation of the legislative power of eminent domain existent because of section 17 of article 1 of our Constitution, to the effect that no person's property shall, without consent, be taken, damaged, or destroyed for or applied to public use, without adequate compensation being first made or secured, does not apply in this case, for it affirmatively appears that appellants are not owners of lands abutting on that part of public road No. 39 that will be submerged or used in establishing the proposed reservoir. On the contrary, their properties are situated east of the proposed reservoir and abutting on parts of the road not taken. Their remedy, therefore, if any, is not one for injunctive relief, as herein sought but an action for damages. See Burroughs v. City of Dallas (C. C. A.) 276 Fed. 811; Lumber Co. v. Railway Co., 104 Tex. 11, 133 S. W. 247, 36 L. R. A. (N. S.) 662, Ann. Cas. 1913E, 870; City Commissioners of Port Arthur v. Fant (Tex. Civ. App.) 193 S. W. 334; Wootters v. Crockett, 11 Tex. Civ. App. 474, 33 S. W. 391.

We are thus brought to the material question of whether express power exists to take or submerge that part of state Highway No. 39 proposed for the specified uses.

In considering this question, we have treated appellees as a unit, for each joins in resistance to appellants' suit and manifests the will to maintain the power to perform the threatened acts, hence, if either the commissioners' court or the city of Dallas has lawfully been empowered so to do and both with the concurrence of the highway commission, will so proceed and perform, the question above must be answered in the affirmative.

[8] The statutory provisions relating to the establishment of public roads are to be found

in title 119, chapter 1, of Texas Complete Statutes, or Vernon's Sayles Ann. Civ. St. 1914, arts. 6859–6904. Article 6859 of the chapter declares that all such roads and highways that have been heretofore laid out and established agreeably to law, except such as have been discontinued, are declared to be public roads. It is undisputed that the road or highway under consideration is one that has been established agreeably with article 6863 of the chapter extending from the county seat of Collin county to the county seat of Denton county on the most direct and practical route, and, as such, has been used by the traveling public for many years. We quote the two following articles of the statutes:

"Art. 6860. The commissioners' court of the several counties shall have full powers and it shall be their duty to order the laying out and opening of public roads when necessary, and to discontinue or alter any road whenever it shall be deemed expedient as hereinafter prescribed."

"Art. 6861. No public roads shall be altered or changed, except for the purpose of shortening the distance from the point of beginning to the point of destination, unless the court upon a full investigation of the proposed change finds that the public interest will be better served by making the change; that said change shall be by unanimous consent of all the commissioners elected."

Articles 6875 and 6876 authorize the discontinuance of public roads upon application of eight freeholders of the precinct, and after at least 20 days' notice has been given of the intended application. But article 6885 provides that:

"The commissioners' court may alter or change the course of any public road, in accordance with article 6861 of this chapter, after notice and upon application in the same manner as provided in this chapter for the discontinuance of a road, except that the application 'need not be signed by more than one freeholder of the precinct in which such alteration or change is proposed to be made."

[9, 10] As we construe the appellants' petition, it presents the case of a threatened change in the course of state Highway No. 39, and not one of its total abandonment. It is, in substance, we think, charged that no application or notice of the change in the course of the road as threatened has been made, but it must be said that no change in fact has as yet been made, nor can it be said with certainty that it will ever be made, and we will not assume that, in event the commissioners' court of · Denton county should, with full compliance of the statutes, conclude to change the course of state Highway No. 39 as threatened, it will be so done without the proper application and notice. It is to be noted that in the consideration of article 6861 that the commissioners' court is given full power to alter or change the course

of a public road, if "upon a full investigation of the proposed change" it "finds that the public interest will be better served by making the change," and "that said change shall be by unanimous consent of all the commissioners elected." Appellants charge that one of the commissioners of Denton county failed to sign the tentative agreement made with Dallas county for the change in the course of the road. But this fact is specifically denied, and we hence, in view of the lower court's ruling, must adopt appellees' allegations in this respect, and must further assume that the final order or determination, if ever made, will only be upon the unanimous consent of all the commissioners. It is to be further noted in considering this article that the power of the commissioners' court to change the route of a public road upon application and notice, and after full investigation, is limited only by the necessity of a finding that the public interest will be better served by making the change. In making such investigation no procedure is prescribed; no definition is given of the character of the public interest that shall be controlling, and from the findings no appeal is provided. While the district court is given general power to review the proceedings of the commissioners' court, yet in the matter of changing the route of a public road full power and discretion seems to be lodged in the commissioners' court alone, and neither the district court nor this court would have the power to substitute its judgment for that of the commissioners' court or otherwise set aside that court's final conclusion, except upon a finding that it was corruptly or arbitrarily done. See Stuckey v. Jones (Tex. Civ. App.) 240 S. W. 565; Culp v. Commissioners' Court of Coryell County (Tex. Civ. App.) 214 S. W. 944; Tippett v. Gates (Tex. Civ. App.) 223 S. W. 702.

[11] Appellees alleged, and it is not disputed, that the city of Dallas is acting under an amended charter adopted in accordance with and under the authority granted in section 5, article 11, of the state Constitution, known as the Home Rule Amendment, and in accordance with the Enabling Act, known as the Home Rule Bill. See Texas Complete Statutes, arts. 1096a, 1096b, or Vernon's Sayles' Ann. Civ. St. 1914, arts. 1096a, 1096b. Section 5c of that amended, charter reads as follows:

"That for the purpose of furnishing to the inhabitants of the city of Dallas an adequate and wholesome supply of water for fire protection and domestic consumption and the uses of the said city, the city of ·Dallas shall have the power, by purchase, gift, or devise, or by the exercise of the right of eminent domain by and through condemnation proceedings to acquire and own in fee simple or otherwise, public or private lands and property including riparian rights within the city limits or within any county in the state; that the city of Dallas may ex-

ercise the right of eminent domain by and through condemnation proceedings to acquire and condemn either public or private lands and property and all interest therein for the extension, improvement, or enlargement of its waterworks system including water supply reservoirs, riparian rights, stand pipes, watersheds, the construction of water supply reservoirs and dams, and the laying and building of water mains, and the construction, building, erection, or establishment of any necessary appurtenances or facilities which will furnish to the inhabitants of the city an abundant supply of wholesome water. That in addition to the above powers conferred and for greater certainty the city of Dallas shall have and may exercise all the powers conferred upon water improvement districts or water control and preservation districts under the state statutes now or hereafter existing providing for the exercise of the rights of eminent domain by and through condemnation proceedings, and shall have all the power conferred by general law under the statutes authorizing cities and towns to exercise the right of eminent domain by and through condemnation proceedings and shall have all the power provided by that certain law passed by the Thirty-Eighth Legislature authorizing cities and towns to exercise the right of eminent domain by condemnation proceedings to acquire all the necessary lands and property, either public or private, lying within any such city or outside any such city, or in any county in the state for the purpose of constructing reservoirs, for the purpose of the extension, construction, improvement and enlargement of the said waterworks system, including the construction of water supply reservoirs, watersheds, and such other necessary appurtenances and facilities in order to furnish to any such city an adequate supply of wholesome water, which said statute is found in the General Laws of the state of Texas passed at the regular session of the Thirty-Eighth Legislature.

"That the procedure to be followed in any condemnation proceeding hereunder and authorized herein shall be in accordance with the law governing railroad companies in the comdemnation of rights of way, including the application for condemnation, the measure of damages, the right of appeal, and the other provisions relating to condemnation proceedings by railroads, the city occupying the position of the railroad; provided, however, the city may acquire the fee to any land or property in any such condemnation proceeding when the same is expressed in the resolution ordering the said condemnation proceedings, by the governing authorities.

"That the terms of this amendment shall be cumulative of any other law prescribing or authorizing condemnation proceedings by cities, and the city may proceed under the terms of any applicable state law with reference to the condemnation of lands for the improvement and enlargement of its waterworks system as provided for herein."

Sections 3 and 4 of chapter 18 of the Thirty-Eighth Legislature (General Laws 1923, page 29) read as follows:

Sec. 3. "Subject to the terms hereof any city of the class defined in section 1 hereof that owns and operates its own waterworks system for the purpose of supplying to its inhabitants water for fire protection or domestic consumption and the uses of the city may by purchase, gift, or devise, or by the exercise of the right of eminent domain by and through condemnation proceedings acquire and own in fee simple or otherwise public or private lands and property, including riparian rights, within the city limits or without the city limits or within any county in the state."

Sec. 4. "That for the purpose of furnishing to any such city an adequate and wholesome supply of water any such city may exercise the right of eminent domain by and through condemnation proceedings to acquire and condemn either public or private lands and property for the extension, improvement, or enlargement of its waterworks system, including water supply reservoirs, riparian rights, stand pipes, water sheds, the construction of water supply reservoirs, wells or artesian wells and dams and the construction, building, erection or establishment of any necessary appurtenances or facilities which will furnish to the inhabitants of the city an abundant supply of wholesome water. That in addition to the above powers conferred, and for greater certainty, any such city herein referred to shall have all the powers conferred upon water improvement districts or water control and preservation districts under the state statutes now or hereafter existing providing for the exercise of the right of eminent domain by and through condemnation proceedings, and shall have all the powers conferred by general law under the statutes authorizing cities and towns to exercise the right of eminent domain by and through condemnation proceedings."

It will be observed that both by the charter provision and the act of the Legislature, from which we quote, it is expressly provided that cities of the class under consideration shall have "all the powers conferred upon water improvement districts or water control and preservation districts under the state statutes now or hereafter existing providing for the exercise of the right of eminent domain by and through condemnation procedings," etc.

Under the law relating to irrigation districts, as provided in the acts of the Thirty-Fifth Legislature, chapter 88, General Laws 1917, page 211, it is provided that the storm, flood, or rain waters within the state may be held or stored by dams, in lakes, or reservoirs, etc., and section 76 of that act (Vernon's Ann. Civ. St. Supp. 1918, art. 5006) reads as follows:

"All persons, associations of persons, corporations, and water improvement or irrigation districts shall have the right to run along or across all roads and highways necessary in the construction of their work, and shall at all such crossings construct and maintain necessary bridges, culverts, or siphons, and shall not impair the uses of such road or highway; provided, that if any public road or highway or public bridge shall be upon the ground necessary for the dam site, reservoir, or lake, it shall be the duty of the commissioners' court to change said

road and to remove such bridge that the same may not interfere with the construction of the proposed dam, reservoir, or lake; provided, further, that the expense of making such change shall be paid by the person, association of persons, corporation, water improvement or irrigation district desiring to construct such dam, lake or reservoir."

With this section incorporated within the powers of a city by recent acts of the Legislature having in view the accomplishment of a particular specified object, it seems evident that the restriction upon the power of the commissioners' court, set forth in Rev. Statutes, art. 6861, to the effect that a public road shall not be altered or changed "except for shortening the distance," etc., so strongly urged in behalf of appellants, has, in so far as here applicable, been removed. For by the later legislation, which must control, it is expressly made the "duty" of the commissioners' court to change a road if upon ground necessary for a dam site.

[12] It cannot be said, we think, that under such amplified powers so conferred that appellees may not, all concurring, after due notice and with the specified procedure, change the route of state Highway No. 39, should it in good faith be determined that the public necessity therefor was sufficiently great, and thus establish a proposed reservoir, even though in so doing a section of said highway as it now exists is taken and submerged. We do not see how words of ours can make it plainer in express terms. The statute confers the power of taking both public and private property where the public interest demands, and the exercise of such a power has been more than once distinctly upheld in this state. S. & E. T. Ry. v. G. & I. Ry., 92 Tex. 162, 46 S. W. 784, and Lumber Co. v. Ry. Co., 104 Tex. 11, 133 S. W. 247, 36 L. R. A. (N. S.) 662, Ann. Cas. 1913E, 870, hereinbefore cited. While as a general rule property that has been devoted to one public use, such as the road under consideration, may not be taken for another public use when in so doing the use to which the property has been first devoted is entirely destroyed, yet even in such case a greater or more general public interest may justify a departure from the general rule. And it is to be observed that in the case before us it is not necessarily a destruction of Highway No. 39, but a mere change in its routing, which, at most, imposes disadvantages or damages upon appellants.

[13] Appellants urge that section 76 of the Laws of 1917, quoted above, is inoperative because not comprehended within the caption of the act, as required by article 3, section 35, of the Constitution. That section merely requires the subject of the proposed act to be expressed in the title or caption; the details and machinery for effectually aiding the object of the bill need not be expressed. In Breen v. Texas & P. Ry. Co., 44 Tex. 302, it is said:

It is "sufficient compliance with its provisions [of the Constitution] if the law has one general object which is fairly indicated by its title, though it may embrace different subjects which are connected with or appropriate for the accomplishment of this general object."

[14] The caption is lengthy and to be found on page 211 of the General Laws of 1917. Among other things, it recites that the act is "to provide a more adequate system of laws relating to irrigation and declaring the unappropriated waters of the state the property of the state; authorizing their appropriation, storage and diversion for beneficial uses; * * * conferring the right of eminent domain in aid of construction of irrigation works; * * * authorizing the chartering of corporations to construct and operate irrigation and other works; authorizing contracts for the supply and delivery of water; * * * authorizing the acquisition of lands by irrigation companies, etc.

As it seems to us, section 76 of the act is not so entirely foreign to the general subject specified in the caption as to require its rejection. The authority to establish reservoirs for the purposes and uses specified imply the power, in lawful ways, to acquire the property necessary to impound them. In the case of Howard v. State, 77 Tex. Cr. R. 185, 178 S. W. 506, it is said:

"Only the general or ultimate object is required to be stated in the title, and not the details by which the object is to be attained. Any provision calculated to carry the declared object into effect is admissible."

[15] Other cases might be cited, but it is a familiar rule that, in construing statutes, they should be so construed as to sustain their provisions, if it can reasonably be done. And giving to the caption of the act under consideration the liberal construction to which it is entitled, we overrule the contention that section 76 of the act of 1917 is unconstitutional.

[16] Appellants present a prayer that, in event the power of appellees to submerge the proposed section of Highway No 39 is upheld, then they be required to erect a sufficient causeway over the submerged part so as not to impair the privileges of appellants as heretofore exercised. It is further insisted that no necessity for the establishment of the reservoir at the place indicated has been shown. It would seem that these are details that fall within the discretionary powers of the appellee authorities. See 15 Cyc. 634–638. But, however this may be, we have concluded that the pleadings do not furnish sufficient information to enable us at this time to determine whether in the exercise of a fair discretion it is practical

to locate the reservoir at another or different place, or whether the suggested causeway should be constructed rather than the routing of the road changed.

On the whole, we conclude that the judgment below must be affirmed.

BUCK, J., not sitting.