**LIVE OAK COUNTY, Texas, Appellant,**

**v.**

**LOWER NUECES RIVER WATER SUPPLY DISTRICT, Appellee.**

**No. 78.**

Court of Civil Appeals of Texas.

Corpus Christi.

Sept. 23, 1965.

Rehearing Denied with Concurring Opinion Dec. 8, 1965.

James C. Watson, of Keys, Russell, Watson & Seaman, Corpus Christi, Dan Moody, Jr., Austin, Harry J. Schulz, Three Rivers, W. L. Hardwick, George West, for appellant.

Allen Wood, of Fischer, Wood, Burney & Nesbitt, Ralph Wood, of Wood & Boykin, Corpus Christi, for appellee.

SHARPE, Justice.

This appeal is from a summary judgment in favor of appellee, Lower Nueces River Water Supply District, sometimes hereafter called "District", that appellant, Live Oak County, Texas, sometimes hereafter called "County", take nothing.

County's cause of action originally was to recover payment from District for a proposed road and bridge across Lake Corpus Christi due to the inundation by the lake of an existing County (Lagarto) road and a bridge when the Wesley Seale Dam was completed and its gates closed; and by amended pleadings, alternatively, for declaratory judgment that District is liable to pay for the new road and bridge when completed.

Preliminary proceedings in this case have twice been before the Fourth Court of Civil Appeals at San Antonio. See 312 S.W.2d 696 (Tex.Civ.App.1958, wr. ref. n. r. e.), involving dissolution of a temporary injunction against District, and 352 S.W.2d 139 (Tex.Civ.App.1961, wr. dism.) on plea of privilege. District prevailed on both of those appeals.

On this appeal, County contends by five points of error that the summary judgment herein was improperly granted for reasons, in substance, as follows: (1) the word "change" in Article 7585, Vernon's Ann. C.S., does not preclude County from elevating the inundated roadway at the same, or approximately the same, location, (2) the order of the County Commissioners Court determining that the inundated road should be changed by elevating it along the present route is not arbitrary, capricious nor void, and absent a direct attack may not be ignored or reviewed in this proceeding, (3) to the extent that County's rights and District's obligations depend on whether elevation of the Lagarto Road is practical, feasible or necessary, genuine issues of material facts are presented, (4) insofar as such rights and obligations depend on a determination in this suit upon whether the Commissioners Court of County has properly exercised discretionary authority, genuine issues of material fact are presented, and (5) the take-nothing summary judgment denies County a determination by declaratory judgment as to the extent and conditions of District's obligation to pay the expense of elevating the Lagarto Road.

District answers County's points with basic contentions that (1) the word "change" as used in Art. 7585, V.A.C.S., means change of course, route, location, or to vacate or abandon, rather than change in elevation or raising of the affected road, (2) the order of the Commissioners Court of County concerning elevation of the Lagarto Road is not binding and enforceable against District, and by Reply Brief, that (3) affirmance of the summary judgment will not be res judicata as to any relief

to which County might be entitled except as to its claim of right to compel District to construct or pay for construction of a high level bridge or causeway over Lake Corpus Christi at or near the old Lagarto Road.

Upon the record now presented the summary judgment in favor of District must necessarily rest either upon the premise that the word "change" as used in Art. 7585, V.A.C.S., does not permit elevation of the old Lagarto Road or that the order of the Commissioners Court of County is void; which last premise would necessarily include a finding that there is no genuine issue of material fact concerning whether the Commissioners Court acted arbitrarily or capriciously.

We have concluded that under applicable rules the take-nothing summary judgment was improperly granted and that the cause should be reversed and remanded for the reasons hereinafter stated.

In connection with the former appeal sustaining District's plea of privilege in this case the Court of Civil Appeals at San Antonio has held as follows:

"When the suit is finally tried upon its merits it will involve the question of the duties and liabilities between the County and the Water District under the provisions of Article 7585, supra. Whatever rights the County has in this matter and whatever duties the Water District owes, are all fixed and provided for in Article 7585. The damages done to the old Lagarto Road and bridge will be immaterial. This suit is now a suit under the provisions of Article 7585, and is in no sense a suit for land or damages thereto." 352 S.W.2d 139, 141.

In connection with the earlier appeal in this case involving dissolution of a temporary injunction, the Court of Civil Appeals at San Antonio has held that Article 7585, V.A.C.S., enacted in 1917 (relating to rights and liabilities of water districts and others

such as appellee along or across public highways), was intended as a limitation upon and a restriction of the provisions of Article 6703, V.A.C.S., (relating to changes and alterations of roads generally and to the authority of the Commissioners Court in connection therewith) and that Art. 7585, controls such provisions as are in conflict therewith. 312 S.W.2d 700. The Fourth Court of Civil Appeals found it unnecessary to consider the matter of location of the changed route because it was then concerned only with the respective rights, duties and authority of the parties in the injunction proceeding. The Court also held that County did not have the right to demand payment by District in advance as a condition precedent to District's right to construct the dam, lake and reservoir and thereby submerge said road. In discussing the balancing of equities requiring the injunction to be dissolved the Court said:

"If the gates be closed and Lagarto bridge inundated by the water of the new reservoir, a high level bridge, if ordered, may still be constructed after such inundation, at a comparatively slight additional cost, and, in the interim, only a comparatively few people will be inconvenienced by being required to travel a few more miles to reach points east of the reservoir." 312 S.W.2d 696, 701.

Article 7585, V.A.C.S., reads as follows:

"All persons, associations of persons, corporations, and water improvement or irrigation districts shall have the right to run along or across all roads and highways necessary in the construction of their work, and shall at all such crossings construct and maintain necessary bridges, culverts, or siphons, and shall not impair the uses of such road or highways; provided, that if any public road or highway or public bridge shall be upon the ground necessary for the dam site, reservoir, or lake, it shall be the duty of the commissioners' court to change said road

and to remove such bridge that the same may not interfere with the construction of the proposed dam, reservoir, or lake; provided, further, that the expense of making such change shall be paid by the person, association of persons, corporation, water improvement or irrigation district desiring to construct such dam, lake or reservoir."

When Art. 7585, V.A.C.S., was enacted in 1917, the Legislature was presumably aware of the powers and duties of county commissioners courts concerning roads and bridges and that actions of water districts could and probably would interfere with and require changes in existing roads and bridges. The Legislature obviously intended to set out the respective rights and duties of water districts and counties in such circumstances. The Statute recognizes that there would be instances where a roadway or bridge might be inundated by a reservoir or lake constructed and provided for use of water districts, and provided for such situation. In such event the county commissioners court is charged by the Statute with the duty of making the change in the road or bridge. The district has the authority to decide that the road will be inundated but does not have the authority to decide what change is to be made in it. The county cannot defeat the district's right to inundate the road or bridge or to construct its dam, reservoir or lake, but can and must determine the change to be made in the road or bridge on account of its inundation, and the district must pay for such changes which are legally made.

On the one hand, County contends that under Art. 7585, V.A.C.S., the change in the inundated roadway can be made vertically or horizontally, and, on the other hand, District says that it can be made only horizontally and that a change by elevating the road is not permissible.

Various definitions of the word "change" from dictionaries and cases are cited to us by the parties in support of their respective positions. County places reliance upon a definition of the word "change" in Webster's International Dictionary, Second Edition (1934), as follows: "1. To alter by substituting something else for, or by giving up for something else; * * *" In discussing the difference between "change" and "alter", the same dictionary says: "to change (the more general and the stronger term) is to render something essentially different from what it was, even to loss of identity, or the substitution of one thing for another; * * * to alter is to make different in some particular respect, as in form or detail, without implying loss of identity; * * *"

District's dictionary definitions of the word "change" are not substantially different from County's. However, some of the cases from other jurisdictions relied upon by District appear to hold in the legal and factual contexts there presented that the word "change" as applied to a roadway may mean a change in location, route or course and not a change in grade or elevation. We do not consider any of the cases cited by District as controlling here. We believe that when the conditions to be remedied and the purposes of Art. 7585, V.A.C.S., are considered, that the word "change" was used in a broad sense rather than in a narrow one. The Statute does not spell out the type of change to be made, neither does it limit the county commissioners court to a "change in location" or a "change in route" or a "change in course", nor does it otherwise place restrictions on the kind of change to be made. The Texas case which appears to be most closely in point is Fry v. Jackson, 264 S.W. 612 (Tex.Civ.App. 1924, n.w.h.). That case involved a suit by landowners to enjoin the Commissioners Court of Denton County, the State Highway Commission and the City of Dallas from constructing a dam on a river that would cause the flooding of a portion of a state highway. The court held that the matter of changing the route of a public road was within the power and discretion of the commissioners

court alone, and at page 616 of the opinion said:

"While the district court is given general power to review the proceedings of the commissioners' court, yet in the matter of changing the route of a public road full power and discretion seems to be lodged in the commissioners' court alone, and neither the district court nor this court would have the power to substitute its judgment for that of the commissioners' court or otherwise set aside that court's final conclusion, except upon a finding that it was corruptly or arbitrarily done. See Stuckey v. Jones (Tex.Civ.App.) 240 S.W. 565; Culp v. Commissioners' Court of Coryell County (Tex.Civ. App.) 214 S.W. 944; Tippett v. Gates (Tex.Civ.App.) 223 S.W. 702."

Only the commissioners court can make the change in the roadway, not the governmental agency building the dam (which in Fry v. Jackson was the City of Dallas and in this case the appellee District), nor can the district court or appellate court substitute its judgment or discretion for that of the commissioners court.

Fry v. Jackson, supra, supports County's position that the question of whether the road should be rerouted or changed by elevation is matter within the discretion of the county commissioners court, as shown by the following quotations 264 S.W. at pages 618–619 of the opinion:

"For by the latter legislation (Art. 7585), which must control, it is expressly made the 'duty' of the commissioners' court to change a road if upon ground necessary for a dam site."

\*    \*    \*    \*    \*    \*

"Appellants present a prayer that, in the event the power of appellees to submerge the proposed section of Highway No. 39 is upheld, then they be required to erect a sufficient causeway over the submerged part so as not to impair the privileges of appellants as

heretofore exercised. It is further insisted that no necessity for the establishment of the reservoir at the place indicated has been shown. It would seem that these are details that fall within the discretionary powers of the appellee authorities. See 15 Cyc. 634–638. But, however, this may be, we have concluded that the pleadings do not furnish sufficient information to enable us at this time to determine whether in the exercise of a fair discretion it is practical to locate the reservoir at another or different place, or whether the suggested causeway should be constructed rather than the routing of the road changed."

█ The summary judgment evidence herein indicates that a change in horizontal location of the Lagarto Road would probably be less costly than elevation of the roadway at or near the old location. However, the cost to District, although an important and proper factor, is not the ultimate test of what change shall be made in the roadway. Without minimizing the consideration of cost to District, County has obligations to its inhabitants, taxpayers and to the travelling public concerning the affected roadway. In making a change in the road which has been inundated by District, the County Commissioners Court may properly consider what is reasonably necessary to be done in order to substantially serve the same purpose as that achieved by the former road. There may be a number of factors which the Commissioners Court could properly consider, such as the time, trouble and expense caused to persons formerly using the old roadway in being required to travel a longer and different route. In this case, a portion of the summary judgment evidence as summarized in County's brief, at pages 46–52, reflects the following:

The affidavit of Marshal R. Sanguinet, registered professional engineer and chief engineer of Wyatt C. Hedrick Engineering Corporation of Houston, sets out his qualifications and knowledge of the area, he

being a graduate of Rice University with a degree of Bachelor of Science in Civil Engineering, a Fellow in the American Society of Civil Engineers and a member of the United States Committee on Large Dams. He started his engineering career in 1930 in Fort Worth as a structural engineer and later had experience in the construction of major highway and railroad bridges. In 1940 he joined the Hedrick firm as chief engineer and project manager on Army and Navy installations including roads, bridges, airfields and military bases in the United States. In 1951, as a member of such firm he was project manager on the $300,000,-000.00 air base construction at Keflavik, Iceland, which consisted of runways, roads, etc. and buildings. In 1954, he joined the firm of Tippetts-Abbotts-McCarthy-Stratton of New York City as resident engineer on two hydro-electric dams in Central Burma after which he was made chief engineer of the same firm for four hydro-electric dams in Turkey, each of such six dam projects costing from $75,000,000.00 to $100,000,000.00 each, the work consisting not only of the dam constructions, but also the building of roads, bridges, water ways and power plants. Since 1935 he has been completely familiar with the Lagarto Road and bridge and surrounding areas on both sides of old Lake Corpus Christi and since the building of the new dam, he is also familiar with the areas on both sides including the development that has occurred on both sides since the new dam was built, and has made a study of the need and feasibility of raising the Lagarto Road above the level of the new lake, including the necessary trestle and river crossing. Based on his experience and study, he stated such building and raising of such new road across said lake at such point is urgently needed, feasible and practical, both from an engineering and an economic standpoint. He stated that based on traffic counts detailed on the traffic map of Live Oak County certified by D. C. Greer, State Highway Engineer, and attached to appellee's papers in support of its motion, it is obvious that a crossing across the lake in the area of the old Lagarto Road would pay for itself in less than seven years, this being based on a traffic count made in 1957 of 185 cars per day using the Lagarto Road prior to its flooding contained in the affidavit of F. A. (Frank) McCaughan, Engineer for the appellee Water District, McCaughan's affidavit being filed in connection with Defendant's Motion for Summary Judgment, and the cost of such road and crossing of $762,902.35 as estimated by said McCaughan in his affidavit. Based on his experience and knowledge of the area and the direction and flow of the traffic across said crossing, the origin and destination of said traffic, Sanguinet is of the opinion that the flooding of the road caused said cars on an average to travel an additional 18 miles each that they would not have to travel if said road and crossing were not inundated, this taking into consideration all of the facts of which he is familiar. Based on an average cost of 10¢ per mile this requires an additional cost per car of $1.80, which multiplied by 185 cars amounts to $333.00 per day, which amounts to a total cost to the traveling public of $121,545.00 per year and said annual figure in seven years amounts to $850,815.00, which is more than the cost of the crossing as estimated by McCaughan, and this annual cost to the traveling public of $121,545.00 does not take into consideration the normal increase in traffic as experienced in all areas of the United States and which this area would naturally also experience. He stated the crossing and bridge of the type as figured by McCaughan has a life span of 50 years with normal maintenance and during such 50-year life such bridge and crossing would save the public the sum of $6,077,250.00; that it is good engineering practice in determining the economic feasibility of any road, bridge or highway project to take into consideration the cost of the structure and the saving to the public of the structure and in this instance the ratio of cost to saving is $762,000.00 to over $6,000,000.00, a ratio of saving to the public of over 8 to 1; that normally if any project shows any saving to the public over its useful life, that is, if

the saving to the traveling public is equal to the cost and maintenance of the facility, that is, a ratio of 1 to 1, then its building is feasible and economically sound; that in good engineering practices, maintenance and repair is estimated at 1% of the cost of the facility per year, or approximately $380,000.00 over its useful life of 50 years, which when added to the cost totals approximately $1,142,000.00, thus still allowing a saving to cost ratio of over 5 to 1; that the national usage of roads and bridges over the United States has increased an average of 4% per year and that if this increase were applied here, the saving would be even greater; that by applying this 4% per year to the 50 year useful life, this would amount to an increase of over 200%; that the increase in the Lagarto area would be greater than this national average; and that by applying the national average of 200% to the area, you could safely add to the saving to the public of $6,077,250.00 the additional sum of 200% or $12,154,500.00, for a total of $18,231,750.00, and thus the ratio of saving to the public would correspondingly increase. Based on his experience and study of the area, Sanguinet stated that FM 2287 does not provide an alternate route to the loss of the Lagarto crossing and bridge which was inundated and does not in any manner adequately serve the needs of the area and that the only way to adequately serve the needs of the area is to build the new Lagarto crossing at the location of the old crossing that was inundated. He stated that he is of the opinion that the building and maintenance of the new Lagarto crossing would not interfere with the operation of the Wesley E. Seale dam nor endanger it in any way. He further states that he has made soundings across the new lake at the approximate location of the old road and bridge and that the new crossing would require a crossing structure having an elevation to the 97 foot mark, 3 feet above the 94 foot level, of only approximately 5450 feet in length. Additional minor filling of 8300 feet would be required to keep the approaches also to the 97 foot mark, but that this additional filling of 8300 feet would

cost only approximately $37,000.00. He further states in his affidavit that he has personal knowledge of the facts stated therein and that such statements are true and correct and that such statements of his contained in the affidavit which contain any element of opinion are based on facts that he has investigated and knows to be true and as an engineer he is qualified from experience to state and express. (End of summary).

The members of a county commissioners court might properly consider that to the extent practicable the route of the old highway should be retained so that the inhabitants, taxpayers and the travelling public would be inconvenienced as little as possible, and that the expense to residents of the area caused by travelling a longer route to reach the opposite side of the reservoir should be minimized.

It cannot be successfully argued that a water supply district can secure the benefits of its authorized legal action in inundating a county roadway without hearing the corresponding burdens which go along with such action. However, it is apparent that a county commissioners court is charged with notice that the taxpayers, water users and customers of the water district must ultimately pay for the change in the roadway. The Statute does not contemplate the giving of unbridled authority to the county, and its commissioners court should act reasonably and prudently in determining the change to be made and the cost of same, without abusing the discretion placed in it.

It can be easily seen that in many instances where a roadway is inundated, the elevation of the old roadway or construction of a bridge would be less expensive and more feasible than relocating the road horizontally. In that situation a district such as appellee would hardly be expected to contend that the change could only be made horizontally.

We are unwilling to hold that Art. 7585, V.A.C.S., limits a county commission-

ers court to a horizontal change of location where a roadway is inundated by a water district. When the purposes of the Statute are considered, we believe, and so hold, that elevation of a roadway is a permissible means of making the required change. There conceivably may be instances in which a county commissioners court can enter a void order changing a road, vertically or horizontally. However, where such body has not acted arbitrarily or capriciously, nor abused its discretion, its order is presumably valid and binding. See Fry v. Jackson, 264 S.W. 612 (Tex.Civ.App.1924, n. w. h.); Hidalgo County Water Control and Improvement District No. I v. Hidalgo County, 134 S.W.2d 464 (Tex.Civ.App. 1939, n. w. h.); Lasater v. Lopez, Tex.Civ. App., 202 S.W. 1039, 1045, affirmed 110 Tex. 179, 217 S.W. 373 (1919); 15 Tex. Jur.2d, Counties, Secs. 44–47, pages 272–277.

In 1957, District advised County that the proposed lake would inundate the Lagarto road and the Commissioners Court of County proceeded to consider what changes should be made in it. After investigation and hearing the Court entered an order providing that the public interest would be better served by elevating the road and building new and higher bridges along the old route rather than re-routing it, and that such action was feasible and necessary. The order further recited that the State Highway Department (by minute order of the commission No. 42357, passed July 26, 1957) had provided, in substance, that pursuant to the request of County, Farm Road 888 would be extended a distance of 4 miles (2 miles of which would be within the lake area created by the Wesley Seale Dam of district) from its then terminus southwest of Highway 9 to the town of Lagarto, so as to there connect with Farm-to-Market Road 2287, and that the extension would be surfaced by the Highway Department and the entire construction thereafter maintained by it, if County or other agencies would provide an acceptable road across the inundated area. The order of the Com-

missioners Court also provided that District should pay or tender payment of sufficient monies to defray the cost of making such change and that the actual construction of the elevated road or causeway and higher bridges be not begun nor then existing bridges and approaches be removed until District has paid to the Commissioners Court sufficient money to defray the cost of such removal and change.

■ In this case, where the order of the County Commissioners Court is questioned collaterally, only a contention that it is void can be considered. See 15 Tex.Jur.2d, Counties, Sec. 44, pages 272–273, wherein, the rule is stated as follows:

"Although commissioners' courts are courts of limited jurisdiction in the sense that their authority is confined to matters pertaining to the general welfare of their respective counties, and in that their powers are limited to those expressly or impliedly conferred on them by the constitution and statutes, when acting within the sphere of the powers specifically conferred, or in discharging the duties imposed on them, they are courts of general jurisdiction, and their judgments are entitled to the same consideration as those of other constitutional courts and may not be collaterally attacked. An order of a commissioners' court in a proceeding in which it has jurisdiction is in effect a judgment, having all the incidents and properties attached to a similar judgment pronounced by any regularly created court acting within the bounds of its authority; it is reviewable only on appeal or in a direct action for that purpose. But where the commissioners' court exceeds its jurisdiction and makes an order without authority, such order, being void, is subject to collateral attack, as where lack of jurisdiction over the subject matter affirmatively appears on the face of the record."

■ Although County did not have the right to demand payment in advance from

District as a condition precedent to construction of the dam, lake, or reservoir, or removal of the old bridge structures, the summary judgment evidence fails to establish as a matter of law that the action of the Commissioners Court was arbitrary, capricious or void insofar as the elevation of the road is concerned. The trial court was not entitled to ignore the order of the County Commissioners Court in such respect. The effect of the take-nothing judgment is to deny to the County the right to change the roadway by elevating it. The authority is conferred by law on the Commissioners Court to make a change in such manner if it is practicable, feasible and necessary. Neither the District Court nor this Court is authorized to substitute its judgment for that of the County Commissioners Court properly exercised on the subject. District was not entitled to a summary judgment that the Lagarto Road could not be changed by elevating it.

Appellant's points one, two, three and four are sustained.

Paragraphs XI and XII of County's Second Amended Original Petition, filed on September 7, 1962, read as follows:

"XI.

"Plaintiff asserts that it is not required to construct and elevate such road first, and then rely on being able to recover the expense from Defendant thereafter. Plaintiff asserts that it is the duty of Defendant, the party whose actions make the change in the roadway necessary and who is required by law to pay for such change, to make suitable arrangements in advance with the Commissioners Court for the payment of the expenses of the changes which the Commissioners Court has found will be required. Nevertheless, without waiving its claim that it is entitled to payment, or suitable arrangements for payment, in advance, Plaintiff says in the alternative, that, if it be determined contrary to Plaintiff's contentions that the making of the change in the roadway is a prerequisite to a cause of action for payment by Defendant of the expense thereof, it is entitled to a Declaratory Judgment of this Court declaring that Defendant is obligated to pay for the expense of elevating the Lagarto Road, or, in the alternative, will be so obligated after such elevation is completed; and Plaintiff here now prays for such Declaratory Judgment. In this connection, Plaintiff says that all of the circumstances required for a Declaratory Judgment by the terms and provisions of the Texas Uniform Declaratory Judgment Act (Art. 2524-1, Vernon's Texas Civil Statutes) are present in this case, and, further, that Plaintiff has no other adequate remedy if elevation before payment is required, in that Plaintiff is not in a position to provide the funds or arrange for the elevation of said road in the face of Defendant's denial of liability without a determination that Defendant will be responsible for the expense thereof.

"XII.

"Pleading further in the alternative, Defendant asserts that it stands ready, willing, and able, once the liability of Defendant for the expense thereof is determined, to construct an elevated road across the lake in question at the location of the old Lagarto Road, or, if it be determined that such is not the best location, to construct an elevated road across the lake at such nearby location as may be determined better suited for such road; and the Commissioners Court of Live Oak County stands ready, willing, and able to take such action and make such findings and determinations as may be reasonably necessary in the premises."

The prayer of the County's said pleading reads in part as follows:

"* * * in the alternative Plaintiff prays for a Declaratory Judgment es-

tablishing that Defendant is obligated to pay to Plaintiff the expense of elevating the Lagarto Road * * * "

The take-nothing summary judgment herein denies to County the Declaratory Judgment sought by it for the purpose of determining its rights and District's liabilities. In its reply brief District contends that affirmance of the summary judgment will not be res judicata as to any relief to which County might be entitled except as to its claim of right to compel District to construct or pay for construction of a high level bridge or causeway over Lake Corpus Christi at or near the old Lagarto Road. On oral argument of this case counsel for District argued in substance that affirmance of the judgment would not preclude County from recovery except to a limited extent and that all other matters would remain for future litigation. This was to a large extent a reiteration of District's statement in its original Brief that it had not and could not deny liability for (1) the reasonable cost of removal of the old bridge, approaches and structures over the arms of Old Lake Corpus Christi or (2) the reasonable cost incurred and paid by County in connection with such alternate additional road or roads as may be necessary, feasible and practicable. However, the record herein does not establish an unqualified or specific admission by District to do anything except pay for the removal of the old bridge and approach structures. District has sought and recovered a summary judgment that County take nothing herein. On the record now presented District was not entitled to such declaration or judgment. The effect of an affirmance of the present summary judgment would be to adjudicate adversely to County its claim of right to elevate the old Lagarto Road.

■ It appears herein, in any event, that upon a collateral attack of the order of the County Commissioners Court providing for elevation of the Lagarto Roadway, there would, at least, be presented genuine issues of material fact as to whether that Court acted arbitrarily or capriciously in ordering the road elevated instead of relocating it horizontally. Such issues are not conclusively established against County on the present record. There was and is liability as a matter of law on the part of District for the expenses of a proper and legal change in the Lagarto Road. Under applicable summary judgment rules the record herein does not authorize the judgment rendered by the lower court. Gulbenkian v. Penn, 151 Tex. 412, 252 S.W.2d 929 (1952).

Appellant's point five is sustained.

■ In reversing the judgment and remanding the case for new trial, we desire to make it clear that the material issues of fact herein are yet to be decided in the usual way. In particular, nothing said herein shall be taken as a finding as to what is reasonably necessary to be done in order to actually change the Lagarto Road or concerning the cost of same. However, the lower court must accept the essential holdings of the San Antonio Court of Civil Appeals in the two prior appeals hereinbefore mentioned and of this Court in the instant appeal as the law of the case. See Payton v. Travis County, 129 S.W.2d 361 (Tex.Civ.App. 1939, wr. dism. judgm.corr.); 4 Tex.Jur.2d, Appeal and Error, "the law of the case", Secs. 1007–1008, pages 696–699. Subject to what has just been said, the parties hereto may on the new trial pursue every right and remedy which each of them have in connection with this long-standing controversy.

Reversed and remanded.

Motion for Rehearing Overruled.

NYE, Justice (concurring).

I agree with the statement made by the appellant in the County's brief that: "Any determination of whether the elevation of Lagarto Road along its present route is practical, feasible or necessary will inevitably involve determinations as to various facts which are genuinely in dispute, as will

any determination as to whether the action of the Commissioners' Court was a proper exercise of its discretionary authority."

The statute in question (Art. 7585 V.A. C.S.) is clear. The water district may construct a reservoir over the ground where a public road exists. It is likewise clear that " * * * it shall be the duty of the commissioners' court to change said road and to remove such bridge * * *", provided further, that the expense of making *such change* shall be paid by the District. This statute contemplates placing the responsibility of removing the bridge upon the County, determining where the feasible and practical change of the road shall be made, and requiring the District to pay for the change. The County's determination of where "the change" in the road is to be made, should not of course be such a change as would interfere with the operations of the District's reservoir or dam.

The County, through the Commissioners Court, entered an order or resolution directing a specific change in the road. Before the change had been actually made, the County sought a declaratory judgment to determine the validity of their action and the liability for such action on the District. If the trial court has jurisdiction of this case at all, the burden of proof should be on the County. 1 McDonald Texas Civil Practice, § 207, p. 145. For "it is plain that where the burden of proof lies may be decisive of the outcome." Speiser v. Randall, 357 U.S. 513, 525, 78 S.Ct. 1332, 1342, 2 L.Ed.2d 1460. The present action should test whether or not the County acted arbitrarily or capriciously and whether it abused its discretion in determining the location of the future road.

If the trial court has jurisdiction of this case, then upon proof and a favorable finding by the trial court of the validity of County's order or resolution, the County may then be entitled to a declaratory judgment against the District for the expense of the proposed change. Had the County

already made "such change" as contemplated by the statute (7585 V.A.C.S.) and was thereafter seeking reimbursement from the District for the expense of making such change, then, the District, if dissatisfied, would be relegated to a collateral attack on the order or resolution of the County.

The County is not limited under this statute to a change of the road either horizontally or vertically so long as it meets the test set forth by our courts: that its decision, if lawfully made, was not tainted with fraud or collusion; and/or that the Commissioners Court's decision was not so grossly unreasonable or capricious or arbitrary as to amount to fraud as a matter of law. The law vests in the Commissioners Court a duty to act with discretion in this case; its action is not ministerial in nature. 157 Tex.Jur.2d § 47, p. 275–276.

It has been said by appellant County that the County cannot dictate to the District where to locate the dam or what land is to be inundated. Therefore, the District cannot dictate to the County where to change or locate the road. It must be observed, however, that the District pays for the dam and the road. Where the County has the discretion in locating the road, and at the same time is not required to pay for it, its action must be scrutinized. It is therefore, clear that the County has an obligation to act with reason and discretion, considering not only its obligation and duty to the inhabitants that it governs, but also to consider with such action the people, taxpayers and users within the jurisdiction of the district who are required to pay the cost. The District is a separate political subdivision of our state, created by the sovereign will of the state, and standing upon the same footing as the County. Willacy County Water Control and Improvement District No. 1 v. Abendroth, 142 Tex. 320, 177 S.W.2d 936, 937 (Sup.Ct.1944). The statute (Art. 7585 V.A.C.S.) does not contemplate the giving of a "blank check" to the County.

The trial court erred in granting the summary judgment because of the fact issues needed to be determined. Based on the above views, I agree that the motion for rehearing should be overruled.