**H. D. ALLEY et al., Appellants,**

v.

**W. T. JONES et al., Appellees.**

**No. 6170.**

Court of Civil Appeals of Texas.

Beaumont.

March 6, 1958.

Rehearing Denied March 26, 1958.

McClain & Harrell, Conroe, for appellants.

Fred W. Moore, Houston, Nat H. Davis, Conroe, for appellees.

R. L. MURRAY, Chief Justice.

This an appeal from a judgment in the district court of Montgomery County, in a suit involving the allocation of county road and bridge funds to the several precincts.

Suit was brought by appellees W. T. Jones et al., who were the County Commissioner of Precinct 4 and 14 others, who are residents and taxpayers of such precinct. Defendants were the appellants here, the County Judge, three County Commissioners, the County Treasurer, and the County Auditor.

The Commissioners' Court of Montgomery County on January 16, 1957, passed an order allocating road and bridge funds to the four precincts of the county. On January 25, 1957 the appellees brought their original suit against the appellants seeking to enjoin the disbursement of road and bridge monies under the allocation of the January 16th order. The trial court granted a temporary restraining order when the suit was filed. On January 28, 1957 the Commissioners' Court passed a nunc pro tunc order in connection with January 16th order. The appellee Peel, the commissioner for Precinct 4, filed contempt charges against other members of the Commissioners' Court and thereafter on February

1, 1957 the Commissioners' Court passed an order rescinding both orders of January 16th and January 28th. Said order further provided that subject to the approval of the District Court, the Commissioners' Court would forthwith order and promptly hold a public hearing prior to entering another order allocating the road and bridge fund. On February 4, 1957, the District Court granted a temporary injunction, which was issued by agreement of the parties, to be effective until the case was tried upon its merits. The order was entered without prejudice to the rights of the parties to be determined upon a final hearing of the cause. Such order also provided that the Commissioners' Court could hold such hearings and make such findings and orders with reference to the division or allocation of said funds as the Commissioners' Court might desire, but such order should not be executed or carried into effect until the further orders of the District Court. On March 12, 1957, the Commissioners' Court began a public hearing for the purpose of determining the condition of the roads and bridges in each commissioner's precinct and the needs of each precinct in the county. This hearing continued through March 16, 1957. On March 19, 1957, the Commissioners' Court passed its order allocating the road and bridge fund, lateral road fund, National Forest reecipts, farm to market road fund and automobile registration fees for the year 1957. This is the order which was under attack in the trial of the case in the District Court and on appeal.

Thereafter the appellees filed their first amended original petition attacking the order of March 19th, contending that it was void and of no force and effect because of the arbitrary and capricious nature of the proceedings and order, and further contending that the Commissioners' Court exceeded its jurisdiction and abused its discretion in making the allocations of the road and bridge funds for 1957. They sought to have said March 19th order set aside and held for naught and the disbursement of the road and bridge monies under said order enjoined. They also sought to have the trial court by its judgment allocate the road and bridge fund to the various precincts for the year 1957, awarding a higher percentage to Precinct 4.

Appellants, by their first amended original answer, denied that they allocated said funds in question without first having given due consideration to the needs and conditions of the commissioners' precincts of said county. They further denied that they arbitrarily or unlawfully allocated said funds for the purpose of depriving Precinct No. 4 of its proper share of the road and bridge fund. Appellants further answered that on the 12th day of March, 1957, the Commissioners' Court of Montgomery County, Texas, began a public hearing for the purpose of determining the condition of the roads and bridges in each precinct and the needs of each commissioner's precinct in Montgomery County, Texas; further answered that the court employed an engineer to conduct a survey of the roads and bridges of said county; that in pursuance of such employment, said survey was conducted fairly and impartially and that the court had the benefit of the report of said engineer, together with testimony under oath; that the court had the benefit of testimony of two other engineers, and further answered that in passing the order dated March 19th allocating said funds to the various commissioners' precincts, the court considered all relevant facts and circumstances, and exercised its sound judgment and discretion in voting for and passing said order.

The trial court heard the case without a jury, after it was announced to the court that no issue of fact was involved and that only a question of law was to be decided. The court rendered its judgment denying the application for permanent injunction and dissolving the temporary injunction theretofore issued. The judgment further provided that the allocation order of March 19, 1957 did not apply to the months of February, March, April, May and June. The judgment further provided that the Com-

missioners' Court should proceed to allocate said road and bridge funds for the months of January, July, August, September, October, November and December, 1957 in accordance with the order of March 19, 1957.

The appellants contend on appeal that the trial court correctly upheld the validity of the March 19th allocation order but erred in limiting the application order to the months of the year named. The appellants say that this latter part of the judgment was erroneous because it directs the Commissioners' Court to allocate such funds for the months named without any possibility of change therein to meet emergency situations, and is in effect an allocation order by the District Court instead of by the Commissioners' Court.

The appellees contend on appeal that the trial court erred in dissolving the temporary injunction and in declining to issue the writ of permanent injunction, and in refusing to make an order allocating the monies in the road and bridge fund to the various precincts.

Both sides to this controversy have filed extensive briefs and supplementary and reply briefs, all of which have been of great assistance to this court.

The parties are in disagreement fundamentally over the construction and application of the statutes which apply to the expenditure of road and bridge funds, Articles 6740 and 7048a, Vernon's Annotated Civil Statutes of Texas. The two landmark cases which decide the effect and application of these statutes to this controversy are Stovall v. Shivers, 129 Tex. 256, 103 S.W.2d 363, and Garland v. Sanders, Tex.Civ.App., 114 S.W.2d 302, 306. The parties disagree as to the holding in Stovall v. Shivers, supra. The appellants contend that the case holds that the controlling and conclusive factor in the division of the monies in a road and bridge fund is the proportion of tax values and taxes collected in the various precincts. Appellees and cross appellants on the other hand contend, to quote from their brief, "that

the deciding factor in any division or allocation between the various precincts is not the taxable value or taxes collected, but rather the necessities of the various precincts with reference to the condition of the roads and bridges therein."

■ The opinion in Stovall v. Shivers, supra, in discussing said Article 6740, states as follows [129 Tex. 256, 103 S.W.2d 367]: "That article requires that the road and bridge funds of all counties shall be judiciously and equitably expended. It further requires that such funds shall, as nearly as the condition and necessity of the roads will permit, be expended in each commissioners precinct in proportion to the amount collected in such precinct. The dominant purpose of this statute seems to be to require that the road and bridge fund shall be expended in each commissioners precinct in proportion to the amount collected therein. In this regard, the statute means that each precinct shall prima facie be entitled to its own funds, and in the absence of any reasons to the contrary they shall be so divided and expended." It seems clear to us that from the language of that case, and many others which have followed it and cited it as authority, the basic meaning of the statute and the holding of the case is as contended for by the appellants.

■ From the holding in Stovall v. Shivers, supra, it is also clear that the district court had no power to make any allocation of the road and bridge funds in this case. "The district court is, of course, without power to determine how the road and bridge fund shall be expended." Under the pleadings and the facts before it, the trial court was clothed with authority and responsibility to determine whether the order under attack was void or not. If he had determined that the order was void for any of the reasons set forth in the pleadings of the plaintiffs below, he should have declared it void and enjoined the allocation and expenditure of funds under such order. He was powerless

to enter any order allocating such funds. That is a duty which is placed upon the Commissioners' Court alone. If the Commissioners' Court, in passing such order, acted arbitrarily without the exercise of any discretion, or clearly abused its discretion, the district court in the exercise of its equitable powers could review and abrogate such action. Its power went no further than to set aside and abrogate the action of the Commissioners' Court.

■ The appellees and cross plaintiffs say that under the general supervisory power of the district court over the Commissioners' Court it had the power to set aside the order of the Commissioners' Court and make an order of its own properly allocating the road and bridge fund of Montgomery County. We do not agree, in view of the above holding in Stovall v. Shivers. The supervisory control over the Commissioners' Courts vested in the district courts under the constitution has been discussed in numerous appellate decisions. The appellate courts have repeatedly held that the judgments of Commissioners' Courts in all matters in which they are given jurisdiction by the constitution and statutes are entitled to the same consideration as those of other courts provided for by the constitution. It is equally well settled that such supervisory power can only be invoked when the Commissioners' Court acts beyond its jurisdiction or clearly abuses the discretion conferred on it by law. West Production Company v. Penn, Tex.Civ. App., 131 S.W.2d 131; Rodriguez v. Vera, Tex.Civ.App., 249 S.W.2d 689, 692; Garcia v. State, Tex.Civ.App., 290 S.W.2d 555. We think it is clear in this case that the supervisory power of the district court over the action of the Commissioners' Court in passing the order of March 19, 1957 was limited to deciding whether it was valid or not.

The trial court by deciding in its judgment that the temporary injunction theretofore issued should be dissolved and that the permanent injunction prayed for should be denied, held, in effect, that such Commissioners' Court order of March 19th was not invalid, and that it was a valid judgment of that court.

If such holding of validity was supported by the record produced on the trial, then all the other provisions of the trial court's judgment go beyond the powers of the district court in such matters and should be stricken from the judgment and the trial court's denial of the permanent injunction should be affirmed. If the trial court's judgment of validity of the March 19th order is not supported by the record then such judgment should be reversed. On the trial of the case the only evidence introduced by the parties was a copy of the orders of January 16, 1957 and March 19, 1957, by the Commissioners' Court, which was introduced by the appellees. The trial judge on his own motion introduced into evidence a transcript of the proceedings of the hearing before the Commissioners' Court, beginning March 12th and ending March 16, 1957.

The order of March 19th recites that the Commissioners' Court had studied and taken into consideration all the evidence that had been offered, together with the knowledge that it had of the condition and needs of the roads in respect to building and repair in each of the four precincts, taking into consideration the mileage of the roads in each precinct, the amount and type of traffic over roads in each precinct, the taxable values in each precinct for road and bridge purposes, the population in each precinct, the number of streams traversing each precinct, the number and type of bridges and their condition, the square miles contained in each precinct, the industries located in each precinct, the federal and state roads serving each precinct, information furnished by the County Auditor and from the Tax Assessor & Collector's office in the light of the most urgent needs of each precinct, and considering all relevant facts and circumstances and in the exercise of its sound judgment and discretion, allocated the funds as therein set forth.

Because of the length of the Statement of Facts, it is impractical to set forth in detail all the evidence the Commissioners' Court had before it in considering the allocation of the funds for the year 1957. A brief résumé is made of such evidence.

The 1956 valuation of Montgomery County was $73,208.300. Valuation by precinct was as follows:

| Valuation By Precincts | No. 1 Prec. | No. 2 Prec. | No. 3 Prec. | No. 4 Prec. |
|---|---|---|---|---|
| Mineral | $ 29.450 | $ 50,209,500 | $4,457,500 | $ |
| Railroads | 92,000 | 594,370 | 403,520 | 382,600 |
| Pipe lines | 191,890 | 1,984,671 | 260,221 | 303,478 |
| Personal property rendered by oil companies, carbon black plant, creosoting co., Power Co. and Saw Mills | 42,711 | 2,652,874 | 309,200 | 159,564 |
| Grand Total | $ 356,051 | $ 55,441,415 | $5,430,441 | $ 845,642 |

The evidence as offered does not account for the difference in the total of the valuation by precincts and the valuation of Montgomery County, which is $11,133,751. It is reasonable to assume, however, that the great bulk of such value is in Precinct No. 2, particularly with its business establishments, residences and industries, where one would ordinarily expect to find valuation. We note from the foregoing that Precinct No. 2 has by far the greatest valuation, with Precinct No. 3 second, Precinct No. 4 third, and Precinct No. 1 fourth.

The school census for 1957 shows Conroe to have the greatest number of scholastics, with Precinct No. 1 second, Precinct No. 3 third, and Precinct No. 4 fourth.

It is undisputed that most of the industries, most of the road mileage, most of the residences, most of the traffic, the heaviest traffic, and more of the streams, are in Precinct No. 2. Precinct No. 4 is thinly populated, and its principal towns are Montgomery, with a population of between 400 and 500, and Dobbin, with a population of about 250. Except for one sawmill, and a couple of very small mills working less than a dozen people part of the time,

there is no industry located in Precinct No. 4. The two principal towns are served by Highway 105, running East and West, and Farm-to-Market roads running North and South. Approximately 92,000 acres of land in the Northern portion of Precinct No. 4 are within Sam Houston National Forest, in which very few people live. Precinct No. 4 has no oil production, and the principal business is a little ranching and pulpwood contracting. The map which is offered in evidence shows the location of the Farm-to-Market roads and other highways serving each of the precincts. Except for some pulpwood and log hauling, the traffic over the roads of Precinct No. 4 is comparatively light in weight, with few vehicles traveling over said roads.

The other precincts, and particularly Precincts Nos. 2 and 3, where there are oil fields, have much traffic bearing heavy loads, all of which necessitates roads built of heavy and better materials. Unquestionably, the roads and bridges in all four precincts are in need of constant repair and maintenance.

Precinct No. 1 has a total of 161.28 miles of all types of roads, of which 49.73 miles are gravel, 55.88 miles are black top, 46.92 miles are dirt, and 8.75 miles are dirt and gravel, together with 1,847 feet of bridges.

Precinct No. 2 has a total of 295.94 miles of all types of roads, of which 103.89 miles are black top, 49.96 miles are gravel, 139.95 miles are dirt, and 2.45 miles are dirt and gravel, together with 6,345 feet of bridges.

Precinct No. 3 has a total of 123.96 miles of all types of roads, of which 77.15 miles are black top, 22.20 miles are gravel, and 24.67 miles are dirt, with 3,032 feet of bridges.

Precinct No. 4 has a total of 169.53 miles of all types of roads, of which 30.89 miles are black top, 91.31 miles are gravel, 38.18 miles are dirt, and 9.15 miles are dirt and gravel, together with 2,831 feet of bridges.

 From the above summary of the facts introduced in the hearing before the March 19th order was passed, the order was not arbitrarily passed without regard to the need and necessities and condition of the roads and bridges in Precinct No. 4 or any other part of Montgomery County. There is no procedure perscribed for a Commissioners' Court to follow in determining necessity for roads and bridges in any part of a county or in a whole county. The Commissioners' Court has a right to exercise its sound judgment and discretion in determining the necessity for the allocation of such funds. It cannot be said from the above record that the action of the Commissioners' Court was not supported by substantial evidence. We think it is apparent that on its face the order did not attempt arbitrarily to apportion the road and bridge funds strictly on a basis of the proportion of taxes collected in the various precincts. If that had been done here the percentage allotted to Precinct No. 4 would have been a great deal smaller than the 21 percent allotted in the order. Since the 21 percent allotted to Precinct No. 4 was so much greater than its percentage of the taxes assessed and collected in its precinct, the order made such an allotment in consideration of all the factors which the order itself recites as having been considered.

We hold that the March 19, 1957, order of the Commissioners' Court was supported by substantial evidence before it, that such an order was within the jurisdiction of the Commissioners' Court and did not exceed such jurisdiction, that no arbitrary action was shown on the part of the Commissioners' Court in passing such order and that the trial court's holding that such order was a valid order was correct and supported by the record before it. We further hold that all other provisions of said judgment in regard to limitations upon the effect of such order were erroneous and outside the authority of the district court in this case.

The judgment of the district court will be reformed so as to order, adjudge and decree only that the temporary injunction theretofore issued be dissolved and that the prayer for permanent injunction be denied, and as so reformed such judgment is affirmed.

In considering the contentions of both parties, we have not considered the "defendants' motion to correct judgment" and the exhibits attached thereto, nor have we considered other matters which were not before the trial court on the trial of the case.

Reformed and affirmed.