### RODRIGUEZ et al. v. VERA et al.
### No. 12411.

Court of Civil Appeals of Texas.
San Antonio.

May 14, 1952.

Rehearing Denied June 4, 1952.

690

A. J. Vale, Rio Grande City, Raymond, Algee, Alvarado, Kazen & Woods, Laredo, L. Hamilton Lowe, Austin, for appellants

S. B. Smith, Edinburg, for appellees.

NORVELL, Justice.

This is an appeal from a final decree of the District Court of Starr County declaring invalid five orders of the Commissioners' Court of Starr County, dated August 16, 1951. Appropriate injunctive relief was granted restraining said Commissioners' Court and other officials of Starr County from giving effect to such orders. Trial was to the court without a jury. Findings of fact and conclusions of law were filed and are here attacked by appellants who are the officials of Starr County affected by the injunction.

The stricken orders relate to the consolidation of justice precincts and election precincts in the western portion of Starr County, together with a change in polling places.

The subjoined map shows Election Precincts Nos. 5, 6 and 7 of the County as they existed prior to the orders passed on April 16, 1951. The Rio Grande and U. S. Highway No. 83 is also indicated, as well as the

settlements and towns of Roma, El Saens and Escobares.

The polling places for Election Precincts Nos. 5 and 6 were located at Escobares and Roma, respectively. Justice Precinct No. 5 was the same as Election Precinct No. 5. Justice Precinct No. 2 embraced Election Precincts Nos. 6 and 7.

The orders held invalid by the district court purported to (1) consolidate Election Precincts Nos. 5 and 6, and designate the consolidated precinct as No. 6; (2) designate a place in El Saenz as the polling place for new Election Precinct No. 6; (3) consolidate Justice Precinct No. 5 with Justice Precinct No. 2, and designate the new justice precinct as No. 2; (4) fix the places for and prescribe the times for holding terms in new Justice Precinct No. 2; and (5) appoint Daniel Guerra and Jose Pilon (justice of the peace and constable of old Precinct No. 2) justice of the peace and constable, respectively, of new Justice Precinct No. 2.

The supervisory control over commissioners' courts vested in the district courts by our constitution (Article 5, § 8,

Vernon's Ann.St.Const.), has been discussed in numerous appellate decisions. Orders of commissioners' courts relating to matters within their jurisdiction are presumedly valid. The establishment of election precincts and justice precincts admittedly lie within the jurisdiction of the commissioners' courts. Const. art. 5, § 18, Article 2933, Revised Statutes, 1925, § 12, 1951 Election Code, Article 2.04, Election Code, Vernon's Ann.Civ.Stats. In Tarrant County v. Shannon, 129 Tex. 264, 104 S.W.2d 49, it was said that:

"The appellate courts have repeatedly held that the judgments of commissioners' courts in all matters over which they are given jurisdiction by the Constitution and statutes are entitled to the same consideration as those of other courts provided for by the Constitution. Schiller v. Duncan, Tex.Civ. App., 21 S.W.2d 571; Williams v. Ball, 52 Tex. 603, 36 Am.Rep. 730; Bradford v. Moseley, Tex.Com.App., 223 S.W. 171.

"It is equally well settled that the supervisory power of the district court over the judgments of a commissioners' court, as authorized by article 5, section 8, of the Constitution, and article 1908 of the Revised Civil Statutes, can only be invoked when it acts beyond its jurisdiction or clearly abuses the discretion conferred on it by law. Haverbekken v. Hale, County Judge, et al., 109 Tex. 106, 204 S.W. 1162; Oden v. Barbee, 103 Tex. 449, 129 S.W. 602; Bourgeois v. Mills, 60 Tex. 76; Currie v. Glasscock County, Tex.Civ.App., 183 S.W. 1193; Schramm v. Knolle, Tex. Civ.App., 240 S.W. 612; Schiller v. Duncan, supra."

See also, Cannon v. McComb, Tex.Civ. App., 268 S.W. 999; Davisson v. Eastland County, Tex.Civ.App., 6 S.W.2d 782, affirmed in Eastland County v. Davisson, Tex.Com.App., 13 S.W.2d 673; King v. Falls County, Tex.Civ.App., 42 S.W.2d 481; Hidalgo County v. Johnstone, Tex.Civ.App., 137 S.W.2d 825; Ham v. Garvey, Tex.Civ. App., 155 S.W.2d 976.

■ It has been said that an order of the commissioners' court cannot be considered as so arbitrary as to constitute an abuse of discretion if it be reasonably supported by substantial evidence. Railroad Commission v. Shell Oil Co., 139 Tex. 66, 161 S.W.2d 1022; Patillo v. County School Trustees of Wilson County, Tex.Civ.App., 235 S.W.2d 924.

When these tests are applied to the facts disclosed by the evidence, we believe it apparent that the trial court erred in setting aside the orders relating to the consolidation of the justice precincts.

■ The constitution provides that the commissioners' court shall divide the county into justice precincts "for the convenience of the people". Const., Article 5, § 18. In so doing, the commissioners' court exercises a discretionary power. Consequently, in order to invalidate an order consolidating justice precincts it must be shown to be of an arbitrary nature under the test of convenience of the people. Here it is not shown that within the area of the new consolidated justice precinct (No. 2) that there is need for another justice of the peace or constable to serve the "convenience of the people." It is not shown that the population, the number of civil and criminal cases within the jurisdiction of the justice court, difficulties of travel or communication are such as would require two justice precincts.

What has been said with reference to a consolidation of the justice precincts is likewise true of the election precincts involved. It appears that a re-arrangement of election precincts in Starr County was effected in 1947, but that order is not here directly attacked. The voting strength of the present consolidated precinct is about 1,000, as indicated in the 1950 Democratic primary election. It appears that there are other election precincts in the county comparable in size, although the new consolidated precinct would be among the larger ones of the county. We cannot say that the consolidation of voting precincts effected by the commissioners' court is wholly arbitrary and unreasonable.

However, the facts relating to the location of the polling place within the new consolidated election precinct present a different situation. While the town of Los Saenz is

located between Escobares (the polling place of old election precinct No. 5) and Roma (the polling place of old election precinct No. 6), it appears that the building known as the Veterans' School is not suitable for a polling place serving the large number of voters residing in the new consolidated election precinct. The trial judge's description of the proposed polling place and its environs is as follows:

"I find that Highway 83, which is the highway from east to west through Starr County, runs along the northern edge of the Community of Los Saenz, which is bisected by narrow dirt streets; that voters from other localities going to said Veterans' School to vote would have to approach and enter Los Saenz over said Highway; that said school building is on the South side, almost the extreme south edge of Los Saenz, about six blocks from the highway, and that principal approach from the highway to the school building is over a narrow, unpaved street. The building is on a corner, both streets passing the same, north to south, and east to west, are very narrow, ranging in width from 22 feet to 29 feet clearance, and on most of the corners of the streets, at least 75% of them, are houses plumb up to the streets. Los Saenz is purely a residential community. In the vicinity of the school building, many children are accustomed to play in the streets, and people in cars have to stop before entering the intersection on account of blind approaches. There are no public eating places in the community, and there is no parking space in the vicinity except a small part of the ground on which the building is located, within the hundred feet in which loitering is prohibited by law. The available room of the building itself is 29 feet seven inches in width and 17 feet nine inches in depth, and the place is without utility conveniences. I find that the room and facilities in the school building are wholly inadequate to accommodate the total number of voters in the combined precincts, being some 1,234 voters at this time, or for the 977 voters who voted in said two precincts in July, 1950, Primary, and that the approaches and streets by which voters travelling in vehicles coming and going are wholly inadequate for the probable number of vehicles that would be such dangers and congestion of traffic that said polling place is unsuitable for said purposes; and I find that such facts were known to the members of the Commissioners' Court which passed said orders."

The trial judge further pointed out in his findings that the polling place at Roma (the most populous town in the consolidated precinct), used for old Election Precinct), No. 6, was a public school building having commodious quarters and grounds, and of easy access from the highway and other directions; that if the voters from Fronton (a settlement west of Roma) and from Roma, estimated at 612, were required to vote at Los Saenz instead of Roma, they "would have to travel an additional distance going and coming of about four miles, representing a total additional travel of over 2400 miles; and that of the 362 eligible voters in Election Precinct No. 5, some 340 would have to travel an additional distance between the polling place at Escobares and the Veterans' School building at Los Saenz, of five miles going and coming, representing additional over-all travel of about 1700 miles, and that assuming that the Veterans' School at Los Saenz would be more convenient for the voters in Los Saenz and those in Precinct No. 5, North of the Highway at Los Saenz, the voters thus convenienced would be about 280."

The trial judge thus found that the greater convenience for the greater number was not served by the location of the polling place at Los Saenz.

As above pointed out, in a case of this kind, the ultimate question to be decided is not whether the trial judge's findings have support in the evidence, but whether the action of the commissioners' court was arbitrary. However, if the evidence be such that reasonable minds cannot differ as to the proper conclusion to be drawn therefrom, we may safely say that a contrary conclusion represents an arbitrary action.

The trial court's findings represent an accurate statement of the testimony bearing upon the suitability of the proposed polling place at Los Saenz. The type of evidence relied upon to support a contrary finding of suitability is illustrated by that of Commissioner J. M. Longoria, who introduced the orders now under attack. He testified that, "We (the majority of the commissioners' court) took into consideration the fact that in consolidating both precincts, numbers 5 and 6, that Los Saenz would be the most centrally located place. * * * We felt Los Saenz was more centrally located in the consolidated district. * * * We took into consideration the fact that the voters east of Los Saenz would have to travel two and one-tenth miles more than they did before consolidation, and the fact that the people west of Los Saenz would have to travel one and seven-tenths miles more under the present plan than before. But we also took into consideration all the benefits that would be derived from consolidation against the district adverse, and saw that the benefits to the people of the consolidation would be more for consolidation."

The nearest Longoria ever came to testifying as to the actual physical conditions surrounding the Veterans' School at Los Saenz was on cross-examination, as follows:

"Q. Don't you know, Mr. Longoria, the fact that 977, we will say a thousand, voters into that polling place there at Los Saenz in those narrow streets, in that little old house there, they are going to have a hard time voting those people? A. I don't think so.

"Q. Have you got any comparison? A. With what?

"Q. Have you got any other instance to compare with it? A. Except for the matter I saw the place in and out, and I feel it is a pretty good place.

"Q. Easy to get to, get out of, involves no congestion, traffic? A. Well, there are four approaches to it."

The county judge gave somewhat similar testimony. In summation, it may be said that the evidence supporting the commissioners' court's order amounts to the undisputed fact that Los Saenz lies between Escobares and Roma, coupled with the conclusion (which for that matter is evidenced by the order itself) that the majority of the commissioners' court regarded the Veterans' School as being a suitable polling place. There is no dispute as to the details affecting the proposed polling place. These are shown by the trial judge's findings. It is located six blocks off the highway, upon narrow dirt streets at a place having no conveniences for the use of the public. The selection of such place for a large election precinct of over a thousand potential voters, who must necessarily depend upon transportation to reach the polls, cannot be supported as a proper discretionary action, but must be regarded as arbitrary. Du Bose v. Woods, Tex.Civ.App., 162 S.W. 3; Williams v. Woods, Tex.Civ.App, 162 SW. 1031.

While, as above pointed out, we are of the opinion that the consolidation of Election Precincts Nos. 5 and 6 is not in itself invalid as an arbitrary action, said order is so closely connected with that designating a polling place for such consolidated precinct that it must necessarily fall with it. The consolidated precinct should not be left undisturbed with no proper polling place designated, and we cannot attribute such intention to the commissioners' court.

That portion of the judgment avoiding the orders of the commissioners' court relating to the consolidation of Justice Precincts Nos. 2 and 5 is reversed and said orders left in full force and effect.

That portion of the judgment avoiding the orders of the commissioners' court relating to the consolidation of Election Precincts Nos. 5 and 6, together with the designation of a polling place therefor is affirmed, without prejudice, however, to the right of the commissioners' court to consolidate such precincts by proper order and select a proper polling place therefor.

Affirmed in part, reversed and rendered in part.