**LIVE OAK COUNTY, Appellant,**

v.

**LOWER NUECES RIVER WATER SUPPLY DISTRICT, Appellee.**

**No. 7069.**

Court of Civil Appeals of Texas.

Beaumont.

Sept. 25, 1969.

Harry J. Schulz, Three Rivers, W. L. Hardwick, George West, James C. Watson, Corpus Christi, for appellant.

Allen Wood, J. M. Burnett, Corpus Christi, for appellee.

KEITH, Justice.

The appeal is from a take-nothing judgment entered after a jury verdict adverse

to Live Oak County had been received and accepted by the trial court. Since this is the fourth appeal[1] involving an order of the Commissioners Court of Live Oak County entered on November 26, 1957, a review of the background of the case and the earlier decisions will be helpful to an understanding of the issues raised by this appeal. The appellant, Live Oak County, will be referred to herein simply as the "County." The appellee is a conservation and reclamation district created under the provisions of Article 8280–134, Vernon's Ann.Civ.St., adopted pursuant to the provisions of Article 16, Section 59 of the Constitution of the State of Texas Vernon's Ann.St. It will be referred to hereinafter simply as the "District."

### I. General Background

Although created by Legislative enactment in 1949, the District was still a "paper district" until after litigation involving its boundaries was completed early in 1955. Lower Nueces River Water Supply District v. Cartwright, 274 S.W.2d 199, 207 (San Antonio, Tex.Civ.App., 1954, error ref. n. r. e.). Immediately thereafter, District began the construction of the Wesley E. Seale Dam, an $18,000,000 project, across the Nueces River, the dam itself being located in Jim Wells and San Patricio Counties. The impounded waters created Lake Corpus Christi, which inundated the road and bridge involved in this suit, situated in

Live Oak County upstream from the new dam.

In the Injunction Appeal (312 S.W.2d at 698), the court described the road, prior to the closing of the gates on the dam, in these words:

"The Lagarto bridge and road in question are located near the upper reaches of the present Lake Corpus Christi. The road, speaking generally, extends from a point on State Highway 9, across the Nueces River to the farm community of Lagarto. The Lagarto road in question is a caliche road, maintained by the County. The facilities for crossing the Nueces River itself and arms of the present Lake Corpus Christi on the Lagarto road consist of a steel trestle bridge over the main channel of the river and approaches, and two wooden bridges or structures over arms of the lake. * * The road serves the sparsely populated Lagarto farm and ranch community on the west side of the Nueces River, and accommodates those persons who want to pass from east to west over the Lagarto road to Lagarto or from Lagarto to the east."

We attach hereto a schematic drawing showing the location of the old Lagarto road after the gates of the dam had been closed and the reservoir filled. The alternate routes available, which are mentioned in the *Injunction Appeal*, are shown thereon.

---

1. Lower Nueces River Water Supply District v. Live Oak County, 312 S.W.2d 696 (San Antonio, Tex.Civ.App., 1958, error ref. n. r. e.), which we will refer to as the "Injunction Appeal"; Live Oak County v. Lower Nueces River Water Supply District, 352 S.W.2d 139 (San Antonio, Tex.Civ.App., 1961, error dism.), which we will refer to hereinafter as "Venue Appeal"; and Live Oak County v. Lower Nueces River Water Supply District, 396 S.W.2d 450 (Corpus Christi, Tex.Civ. App., 1965, error ref. n. r. e), which will be referred to hereinafter as the "Summary Judgment Appeal."

The County, fully realizing that when the dam was completed the Lagarto road and bridge would be flooded, conferred from time to time with District officials, but no

agreeable solution to the problem was found. On September 13, 1957, District requested that the County remove the steel bridge and the relief structures, invoking Article 7585, V.A.C.S., and stating that the dam would be completed in December, 1957. It is to be noted that the District said nothing about either paying the cost of removal or paying the cost of alternate structures or facilities resulting from such "change."

The County did not take the action demanded by the District, but on November 26, 1957, adopted the order which has been the basis of the litigation between the parties since that time. The order is lengthy and is summarized, to some extent, in the Summary Judgment Appeal (396 S.W.2d at 457). Omitting the lengthy preamble of the order, we reproduce the operative language thereof in the footnote.[2]

Shortly thereafter, the exact date not being available to us, the County instituted its suit for injunction which now brings us to a consideration of the several appeals previously noted, to which we now turn.

### II. Analysis of Prior Litigation

A. The Injunction Appeal (312 S.W.2d 696):

The temporary injunction procured by the County restrained the District from closing the remaining openings in the Dam, or performing any other act which would have the effect of inundating the Lagarto road, pending a final hearing on the merits of the case. As was said: "The principal object of the suit is to compel the District to construct or pay for the construction of a high level bridge at the location of the Lagarto road over the water reservoir to be created by the dam" (312 S.W.2d at 697). The San Antonio Court of Civil Appeals, in a per curiam opinion, invoking the balancing of equities doctrine, reversed the order granting the temporary injunction and it was dissolved (p. 701).

Hopefully seeking to aid the two competing governmental agencies in the settlement of their dispute, the court also made several other holdings which are of interest:[3]

(1) Article 7585, V.A.C.S., authorized the District to inundate the roadway and bridge and the provisions of Article 6703, V.A.C.S., relating to changes in county roads and relied upon by the County, was inapplicable (p. 699).

(2) "Under the above quoted provisions of the statute [Article 7585], the appellee [County] was charged with notice that it was its duty to remove said bridge structures *and change said road*." (Id. All emphasis has been supplied unless otherwise indicated.)

---

2. "It is therefore ordered, adjudged, and decreed by the Commissioners' Court of Live Oak County, Texas, that said Lagarto Road above referred to and effected [sic] by the construction of said Wesley E. Seale Dam and the impounding of water in the new lake created thereby be changed by elevating and raising said road along its present route above the water level of said new lake and the construction of new and higher bridges necessary in connection therewith above the elevation of the water of said new lake; and

   *    *    *    *    *

"It is therefore further ordered, adjudged and decreed by the Commissioners' Court of Live Oak County, Texas, that the actual construction of said elevated road or causeway and higher bridges be not be-

gun nor said present bridges and approaches be removed until said Lower Nueces River Water Supply District has paid to this Court sufficient money to defray the cost of such removal and change."

3. We do not pause to consider the suggestion that some, at least, of these determinations so made, as well as others in the subsequent litigation which we will discuss, was dictum. In any event, it was judicial dictum as distinguished from a mere obiter dictum, deliberately made for the guidance of the trial court in subsequent proceedings. The holdings are, at least, persuasive and should be followed unless found to be erroneous. Palestine Contractors, Inc. v. Perkins, 386 S.W.2d 764, 773 (Tex.Sup., 1964); 21 C.J.S. Courts § 190(c), p. 316.

(3) Notwithstanding the provisions of Article 7585 providing that the expense of making the change in the road shall be paid by the District, such statute "does not authorize appellee [County] to demand that payment be made in advance, as a condition precedent to the right of appellant [District] to construct its dam, lake and reservoir and thereby submerge said road" (pp. 700–701).

(4) Roads and bridges, although constructed by a county, are property of the State, not the county, and the Legislature had the power to authorize the inundation of the road in question (p. 701).

B. The Venue Appeal (352 S.W.2d 139):

Chief Justice Murray of the San Antonio Court, holding that the County could not maintain venue in Live Oak County under Subdivisions 9, 14, and 19 of Article 1995, V.A.C.S., affirmed the judgment transferring the case to Nueces County. He, too, made certain other findings for the guidance of the trial court upon a trial on the merits, to which we now turn:

(1) He reiterated the prior holding that when the dam has been completed, Article 7585 "makes it the duty of the Commissioners' Court of the County to re-locate a road that is to become a part of a reservoir or lake * * *" (p. 141).

(2) "It [Article 7585] also makes it the duty of the Water District to pay the cost of removing bridges and other property interfering with the construction of the reservoir, *as well as the cost of building the relocated road*" (Id.).

(3) The provisions of Article 7585 govern "whatever rights the County has in this matter and whatever duties the Water District owes, * * *" and "damages done to the old Lagarto Road and bridge will be immaterial" (Id.).

C. The Summary Judgment Appeal (396 S.W.2d 450):

The Corpus Christi Court made it very plain that the prior decisions in this case were to govern the proceedings on the new trial, saying:

"However, [upon remand] the lower court must accept the essential holdings of the San Antonio Court of Civil Appeals in the two prior appeals hereinbefore mentioned and of this Court in the instant appeal as the law of the case."

Having determined that the trial court erred in entering the summary judgment in favor of the District and against the County, the Corpus Christi Court, as had the other court in the two prior appeals, made several other holdings which we will review. One of these included these words:

"In reversing the judgment and remanding the case for new trial, we desire to make it clear that *the material issues of facts herein are * * * to be decided in the usual way*" (p. 459).[4]

The Court's holdings, *as the law of the case*, included these:

(1) Article 7585, recognizing that roads might be inundated by the construction of dams, charged the Commissioners Court "with the duty of making the change in the road or bridge" (p. 453).

(2) "The district has the authority to decide that the road will be inundated but does not have the authority to decide what change is to be made in it" (Id.).

(3) "The county cannot defeat the district's right to * * * construct its dam, reservoir or lake, * * *" (Id.).

(4) " * * * but can and must determine the change to be made in the road or bridge on account of its inundation, * * *" (Id.).

---

4. These cryptic words, not otherwise explained in the opinion, have given us, as well as the parties, some difficulty, particularly when we come to discuss the contentions of the parties with reference to the substantial evidence rule of procedure and the submission of issues of fact to the jury for determination in this case.

(5) "* * * and the district must pay for such changes which are legally made" (Id.).

(6) The "change" referred to in Article 7585 may be accomplished by elevation of the roadway and bridge as well as making a horizontal change therein (pp. 453 and 457).

(7) Only the Commissioners Court can make the change in the roadway, not the District; and, neither the District Court nor an Appellate Court can substitute its judgment for that of the Commissioners Court (p. 454).

(8) "The Statute [Article 7585] does not contemplate the giving of unbridled authority to the county, and its commissioners court should act reasonably and prudently in determining the change to be made and the cost of same, without abusing the discretion placed in it" (p. 456).

(9) "In this case, where the order of the County Commissioners Court is questioned collaterally, only a contention that it is *void* can be considered" (p. 457).

(10) The County did not have the right to demand payment in advance from the District as a condition precedent to the construction of the dam, lake, or reservoir, or removal of the old bridge structures (Id.).

(11) "The authority is conferred by law on the Commissioners Court to make a change in such manner if it is practicable, feasible and necessary. Neither the District Court nor this Court is authorized to substitute its judgment for that of the County Commissioners Court properly exercised on the subject" (p. 458).

(12) "There was and is liability *as a matter of law* on the part of District for the expenses of a proper and legal change in the Lagarto Road" (p. 459).

We have not, in our recitation of the holdings of the several courts, included the remarks found in the concurring opinion on the Summary Judgment Appeal (396 S.W.2d at 459, et seq.). It has been said that a concurring opinion has no binding effect as precedent since it represents only the personal views of the concurring judge and does not constitute the law of the case. Lendsay v. Cotton, 123 So.2d 745, 746, 95 A.L.R.2d 1029 (Fla.App., 1960); 20 Am. Jur.2d, Courts § 71, p. 435; 21 C.J.S. Courts § 223, p. 415. Cf. Bridgewater v. Hooks, 159 S.W. 1004, 1009 (Galveston, Tex.Civ. App., 1913), reversed: 111 Tex. 122, 229 S.W. 1114 (1921).

### III. The Attack upon the Order of the Commissioners Court

Accepting as the law of the case the determination in the *Summary Judgment Appeal* that * * *

"In this case, where the order of the County Commissioners Court is questioned *collaterally,* only a contention that it is void can be considered" (396 S.W. 2d at 457),

we come to grips with the threshold question in the case. It is presented factually and legally by the County under its first point.

Article 5, § 18 of the Constitution provides that the Commissioners Court "shall exercise such powers and jurisdiction over all county business, as is conferred by this Constitution and the laws of the State, * * *." Part of the business of the Commissioners Court of Live Oak County is to "re-locate a road that is to become a part of a reservoir or lake when a water district completes its dam." (Venue Appeal, 352 S.W.2d at 141.) The "change" in the road contemplated by Article 7585 may be either vertically or horizontally (Summary Judgment Appeal, 396 S.W.2d at 453–454), and only the Commissioners Court, not the District, the District Court or an Appellate Court, can make that determination (Id. at p. 454).

The County, in the challenged order, made two determinations: (a) that an elevated bridge and roadway along the old

route was the "change" to be made under Article 7585, and (b) such "change" would not be made until the District placed the County in funds with which to make the change. In the *Injunction Appeal,* it was specifically held that the statute did not authorize the County to demand that payment be made in advance "as a condition precedent to" the flooding of the roadway (312 S.W.2d at 700–701). A similar holding was made in the Summary Judgment Appeal (396 S.W.2d at 457). But, clearly the two operative sections of the order were treated as severable in the opinion of the Corpus Christi Court.[5]

By special exceptions, the County challenged the District's attack upon the order of the Commissioners Court as being collateral, but the exceptions were carried with the case.[6] In its motion in limine, the County sought to preclude the introduction of evidence of any "matters behind and leading up to the order" as being a collateral attack thereon. The motion was overruled. Early in the cross-examination of the County's first witness, Naismith, the objection was made to any interrogation of the witness as to matters behind the order. The objection was clearly stated, was overruled, and the County given "a running objection." The County's motion for peremptory instruction at the conclusion of all of the evidence àgain raised the point of the collateral nature of the attack, but the motion was denied.

Objections to Special Issues Nos. 2 and 3 called the Court's attention to the nature of the attack. A similar contention was made in the County's motion to disregard the answers to Special Issues Nos. 2 and 3, but the motion was overruled. Finally, all of these matters were brought to the attention of the Court in the amended motion for new trial; from the order overruling such motion comes this appeal. The County has presented squarely, at every possible opportunity, its contention that the attack was collateral, not direct. We must face the issue so raised.

The answer is, of course, already set out in the law of the case mentioned earlier in this section of the opinion. The Legislature has not adopted any statute setting out the method and procedure for invoking the appellate jurisdiction and supervisory control of the District Court over the Commissioners Court. Article 1908, supra. In Scott v. Graham, 156 Tex. 97, 292 S.W.2d 324, 328 (1956), the Court said: "Certiorari has been suggested as an appropriate method of review." Further, *Scott* is clear authority for holding that a direct equitable proceeding "has the effect of a direct attack upon the order, at least where the Legislature has not prescribed the procedure for appealing from such order" (Id.). See also: Harris County v. Bassett, 139 S.W.2d 180, 182 (Galveston, Tex.Civ. App., 1940, error ref.); 10 Texas Law Review 512; 13 Texas Law Review 537.

The District neither sought certiorari nor did it bring any "direct equitable proceeding" seeking to set aside the order. Instead, it has been *defending* the litigation

5. "Although County did not have the right to demand payment in advance from District as a condition precedent to construction of the dam, lake, or reservoir, or removal of the old bridge structures, the summary judgment evidence fails to establish as a matter of law that the action of the Commissioners Court was arbitrary, capricious or void insofar as the elevation of the road is concerned. The trial court was not entitled to ignore the order of the County Commissioners Court in such respect" (Summary Judgment Appeal, 396 S.W.2d at 457–458). Recognizing the invalidity of the order requir-

ing payment prior to flooding to be invalid, the reference to the remainder of the order can only mean that its validity must be tested under the usual rules governing such orders.

6. The District admitted that it had notice of the order "shortly after its adoption" in 1957, but did not take any appeal therefrom. Article 5, § 8, Constitution gives the District Court "appellate jurisdiction and general supervisory control over the County Commissioners Court." See, also, Article 1908, V.A. C.S.

for more than a decade, contending, in effect, that the order is voidable. The defense of this lawsuit was predicated upon a collateral, not a direct, attack upon the order of the Commissioners Court. The distinction between the two types of action is clearly set out in Crawford v. McDonald, 88 Tex. 626, 33 S.W. 325, 327 (1895).

The "change" required to be made in the Lagarto road and bridge facility was a matter entrusted to the Commissioners Court, which had been repeatedly so held in the prior decisions arising from this very order. In Williams v. Castleman, 112 Tex. 193, 247 S.W. 263, 268 (1922), the Court, citing Article 5, § 18 of the Constitution, said:

> "Under this provision and the statutes generally regulating commissioners' courts, these courts, when acting within the sphere of their powers, must be regarded as courts of general jurisdiction."

Further (at p. 269) the Court said:

> "No principle of law is better settled than that acts of discretion and findings of fact on the part of public officers to which such power is confided, including commissioners' courts, will not be reviewed on appeal."

Recognizing the principles stated above, the court in Yoakum County v. Gaines County, 139 Tex. 442, 163 S.W.2d 393, 396 (1942), said:

> "* * * such judgments are not subject to collateral attack, and are reviewable only upon appeal or in a direct

action for that purpose, *in the absence of a showing of gross abuse of discretion, or of fraud or collusion or lack of jurisdiction.*"

See also: Henn v. City of Amarillo, 157 Tex. 129, 301 S.W.2d 71, 74 (1957): "* * * an order adopted by a Commissioners Court, *unless wholly void,* is generally considered immune from collateral attack"; Tubbe v. Sample, 62 S.W.2d 362, 364 (Beaumont, Tex.Civ.App., 1933, error dism.): "The order of the commissioners' court is regular on its face, and on collateral attack it will be *conclusively* presumed that every fact necessary for the court to find as a prerequisite to its power to act was found by it in support of the order which it made."

■ Having determined, in accordance with the prior determination made by all of the other appellate courts which have considered this matter, that the Commissioners Court of Live Oak County had the exclusive authority and competence to determine the nature of the "change" required by the action of the District; and, having determined that the District's attack upon such action by the Commissioners Court is collateral, we turn now to a consideration of the rule of procedure to be used in testing the validity of the order.

### IV. The Nature of the Review of the Order of the Commissioners Court

The trial court submitted two issues, Nos. 2 and 3, to the jury for determination.[7] Overruling the County's Motion to

---

7. No. 2: "Do you find from a preponderance of the evidence that the Commissioners Court of Live Oak County did not act reasonably and prudently in ordering that the Lagarto road should be elevated over Lake Corpus Christi and that the Water District should pay for such change in advance, under all the facts and circumstances?" To which the jury answered: "It did not act reasonably and prudently."

No. 3: "Do you find from a preponderance of the evidence that in enacting the order of November 26, 1957, the Com-

missioners Court of Live Oak County was arbitrary?" To which the jury answered: "Yes." The instruction in connection with this issue read: "By the term 'arbitrary', as used in the foregoing issue, is meant willful and unreasoning action without consideration and in disregard of the facts and circumstances of the case."

The comments of Justice Calvert in Southern Canal Co. v. State Board of Water Engineers, 159 Tex. 227, 318 S.W.2d 619, 624 (1958) concerning the "utterly incongruous effect of the issue would be

disregard the findings as to these two issues, the trial court set out the special issues and the answers thereto and recited that the "findings were received by the Court, filed and entered upon the minutes of such Court." Thereupon, the decretal portion of the judgment contained this language:

"Accordingly, it is, therefore, ORDERED, ADJUDGED, DECREED and DECLARED that Live Oak County, Texas take nothing from or against Lower Nueces River Water Supply District as to any damages or amounts of money prayed for herein by said County, and Live Oak County is not entitled to any relief by way of declaratory judgment as sought in this suit, and that the said Lower Nueces River Water Supply District is not obligated to pay to Live Oak County, Texas any amount of money or expense in connection with elevating the Lagarto road as prayed for herein by said County and that all costs accrued and incurred in this cause be taxed against Live Oak County, Texas."

It follows from what we have set out above that the determination of the validity of the order of the Commissioners Court was made by the trial court in a de novo type proceeding; and, equally clear is the fact that such determination was made over the objections of the County interposed at every opportunity.

In the leading case of Railroad Commission v. Shell Oil Co., 139 Tex. 66, 161 S.W. 2d 1022, 1029 (1942), the *Trem Carr Case,* Chief Justice Alexander had occasion to go into detail as to the nature of the appeal from an administrative agency, the presumptions of validity, the burden of proof, the duty of the court, and the weight to be given to the administrative finding. One of the illustrations he used in connection with the delegation of power to the administrative agency was that of an ac-

to have the jury decide as a fact from a preponderance of the evidence whether as a matter of law the order is supported by substantial evidence" are peculiarly appropriate here.

tion contesting an order of the Commissioners Court fixing a tax rate.[8] His views on the subject of the substantial evidence rule of procedure are well known. We simply allude to two authoritative statements therein:

He said, for instance:

"If the matter covered by the order is one committed to the agency by the Legislature, and involves the exercise of its sound judgment and discretion in the administration of the matter so committed to it, the court will not undertake to put itself in the position of the agency, and determine the wisdom or advisability of the particular ruling or order in question, but will sustain the action of the agency so long as its conclusions are reasonably supported by substantial evidence" (p. 1029).

Further:

"The record is to be considered as a whole, and it is for the *court* to determine what constitutes substantial evidence. The court is not to substitute its discretion for that committed to the agency by the Legislature, but is to sustain the agency if it is reasonably supported by substantial evidence before the court" (Id.).

Judge Norvell, while upon the San Antonio Court of Civil Appeals had under consideration two orders of the Commissioners Court of Starr County with reference to justice of the peace precincts and election precincts in the case of Rodriguez v. Vera, 249 S.W.2d 689 (San Antonio Tex.Civ.App., 1952, no writ). Citing the *Trem Carr Case,* supra, he said (at p. 692):

"It has been said that an order of the commissioners' court cannot be considered as so arbitrary as to constitute an

8. Attention is called to Justice Norvell's reference to this aspect of the *Trem Carr Case* to be found in Gerst v. Nixon, 411 S.W.2d 350, 354 (Tex.Sup., 1966).

abuse of discretion if it be reasonably supported by substantial evidence."

*Rodriguez* was, incidentally, "a direct equitable proceeding" such as mentioned by Justice Walker in Scott v. Graham, supra (292 S.W.2d at 328).

■ To the foregoing series of cases, we need add but a few more to make it clear that the record as a whole must be considered under the substantial evidence rule of procedure. City of San Antonio v. Texas Water Commission, 407 S.W.2d 752, 758 (Tex.Sup., 1966); Davis v. City of Lubbock, 160 Tex. 38, 326 S.W.2d 699, 715 (1959); Southern Canal Co. v. State Board of Water Engineers, 159 Tex. 227, 318 S.W.2d 619, 623 (1958); Gerst v. Nixon, 411 S.W.2d 350, 354 (Tex.Sup., 1966); Firemen's and Policemen's Civil Serv. Comm., etc. v. Hamman, 404 S.W.2d 308, 311 (Tex.Sup., 1966); Texas State Board of Examiners in Optometry v. Carp, 388 S.W.2d 409, 414 (Tex.Sup., 1965); Pickens v. Railroad Commission, 387 S.W.2d 35, 45 (Tex.Sup., 1965).

■ From our discussion of the foregoing authorities, we conclude that the trial court did not follow the applicable procedure. The findings of the jury, based upon a preponderance of the evidence, will not suffice to constitute a holding of a lack of substantial evidence to support the order. The two procedures, de novo and substantial evidence rule, "are diametrically opposed to each other." Southern Canal Co. v. State Board of Water Engineers, supra (318 S.W.2d at 623).

*V. District's Motion to Dismiss the Case*

Our disposition of the case up to this point makes it necessary for us now to consider the District's contention, presented as a cross-point, that the trial court erred in overruling its motion to dismiss the County's suit. This motion is predicated upon this syllogism: (a) the prior appeals had determined that under Article 7585 the County could change the road vertically and was not confined to a horizontal change *and* that it was not entitled to be paid in advance of actually constructing the changed road; (b) the prior appeals also determined that the County did not own the road and would not be entitled to maintain a cause of action for damages thereto; and (c) not having actually constructed the new road required by the "change", only an advisory opinion is sought. Thus, District argues, Article 7585 has been "construed" in every possible manner and the court below should have dismissed the suit.

In our opinion, this motion is not well taken, and the action of the trial court was correct in this aspect of the matter. The District's cross-point is overruled.

■ We recognize readily and concur in the proposition that the question of jurisdiction is fundamental and can be raised at any time. Able v. Bloomfield, 6 Tex. 263, 264 (1851); Trinity Life & Annuity Society v. Love, 102 Tex. 277, 116 S.W. 1139 (1909); Nevitt v. Wilson, 116 Tex. 29, 285 S.W. 1079, 1084, 48 A.L.R. 355 (1926); California Products, Inc. v. Puretex Lemon Juice, Inc., 160 Tex. 586, 334 S.W.2d 780, 781 (1960); and, of course, Orange Independent School District v. West Orange Independent School District, 390 S.W.2d 81 (Beaumont, Tex.Civ.App., 1965, error ref. n. r. e.), cited to us as "being in point and controlling the case at bar."

The District's position is untenable as shown by a cursory examination of the prior opinions and the record in this case. In the Venue Appeal (352 S.W.2d at 140), the court said that since the flooding of the road had already occurred " * * * the suit has become a contest between the parties over their respective rights and obligations in connection with the inundated roadway."

In the Summary Judgment Appeal (396 S.W.2d at 458), the court sets out the allegations of paragraphs XI and XII of the County's Second Amended Original Petition. These allegations appear verbatim,

even to the numbering of the paragraphs, in the County's trial pleading in *this* cause, the Third Amended Original Petition. Even the portion of the alternative prayer quoted is contained in the exact language in the prayer of our pleading.

Having quoted the allegations of the pleading, the court then said (at p. 459):

"The take-nothing summary judgment herein denies to County the Declaratory Judgment sought by it for the purpose of determining its rights and District's liabilities. * * * However, the record herein does not establish an unqualified or specific admission by District to do anything except pay for the removal of the old bridge and approach structures. District has sought and recovered a summary judgment that County take nothing herein. On the record now presented District was not entitled to such declaration or judgment."

Now, and after another complete trial and four years later, the District still makes no admission that it will ever pay to the County anything for the new bridge or alternative to the old Lagarto road. The question of the cost of removal of the old bridge structures, mentioned in the prior opinion is no longer a dispute between the parties. The bridge has sunk into the mire of the lake bed, the trestles have been removed, and no damage was done to the District's dam by the failure of the County to remove the structures on demand by the District. Indeed, since no party now wants to pay the expense of the removal of the harmless remaining structures, County's refusal to remove the offending structures may well have saved the District a considerable sum.

█ The real, and still live dispute is the one which has existed from the beginning, the reluctance of the District to face up to its obligations to pay the cost of the change in the road which it destroyed. Even in its present brief (p. 70) District is still saying that "it did not re-gard as feasible" the "new and higher bridge." The short answer to that contention is that the Constitution, Statutes, and prior decisions place in the Commissioners Court of Live Oak County—and not in the District or the Courts—the determination of the feasibility and necessity of the new and higher bridge. Article 5, § 18, Constitution; §§ 3 and 4, Article 2351, V.A.C.S.; Summary Judgment Appeal (396 S.W.2d at 454). Cf. Ashburn Bros. v. Edwards County, 58 S.W.2d 71, 73 (Com.App., 1933). The discretion is not, as noted in the Summary Judgment Appeal (396 S.W. 2d at 456) "unbridled." No authority over the type of "change" in the road has ever been conferred upon the District, either as an original grant of power or one implied from those granted unto it.

It is clear that the dispute will continue until the Courts have disposed finally of the matter by declaring the rights, obligations, duties, and responsibilities of the parties. That is the function of the Declaratory Judgments Act, Article 2524–1, V.A. C.S., and under the law of the case as judicially established in the Summary Judgment Appeal, the case is not moot. So holding, District's motion to dismiss the appeal is overruled.

*VI. District's Claim That Order Was Void*

Even in a collateral attack, District would be entitled to have the order of the Commissioners Court set aside if it were successful in establishing that the order was *void*, as distinguishable from *voidable*. One of the better reasoned cases on the distinction between the two is to be found in Southern Surety Co. v. Texas Oil Clearing, 281 S.W. 1045, 1046 (Comm.App., 1926). See also, Crawford v. McDonald, supra (33 S.W.2d at 327). But, unless the order was void, District could not secure relief except in a direct attack. Crawford v. McDonald, supra.

No jurisdictional defects appear upon the face of the order under attack and it

appears regular in all respects. It was one within the jurisdiction of the Commissioners Court. Contrary to the assertion of District, the order itself does not impose a monetary obligation upon the District. *That was done by the statute which the District itself first invoked.* The Commissioners Court, in adopting the order was simply exercising the discretion confided to it by the statute. To repeat, the financial obligations of the District now in issue were imposed by the statute, not the order under attack. This is made crystal clear in the words chosen by Justice Murray in the Venue Appeal (352 S.W.2d at 141):

"Art. 7585, Vernon's Ann.Civ.Stats., makes it the duty of the Commissioners' Court of the County to re-locate a road that is to become a part of a reservoir or lake when a water district completes its dam. It also makes it the duty of the Water District to pay the cost of removing bridges and other property interfering with the construction of the reservoir, as well as the cost of building the relocated road."

In exercising its discretion as to the relocation of the road made necessary by the District's inundation of the old road, the Commissioners Court was not acting in an adversary proceeding, but in the discharge of a statutory duty. In such instance, there was no requirement in the statute of notice. Greer v. Railroad Commission, 117 S.W.2d 142, 145 (Austin, Tex.Civ.App., 1938, error dism.). No property of District was taken by the order under attack, and if it felt aggrieved, it had the right of direct appeal from the order [*Scott,* supra (292 S.W.2d 324, 328); *Bassett,* supra (139 S.W.2d at 182); 73 C.J.S. Public Administrative Bodies and Procedure § 130, p. 452].

▪ District claims that Commissioner Curlee, in whose precinct the old road was located, was disqualified to participate in the proceedings of the Commissioners Court which adopted the order in question. This contention is based upon the fact that Curlee resided in the area, owned land on both sides of the river, had been using the old road and bridge, and would be benefited personally by the new roadway. That he did so participate is not questioned; nor is it to be doubted that the order was a unanimous decision of all five members of the Commissioners Court. It was Curlee's duty, under Article 7585 and as a member of the Commissioners Court to relocate the road. He acted in an official capacity and performed a lawful act; and, the act being lawful, his motives were wholly immaterial. Travis County v. Matthews, 235 S.W.2d 691, 696 (Austin, Tex.Civ.App., 1950, error ref. n. r. e.). Certainly, motives being immaterial,[9] they are not subject to being attacked collaterally.

*VII. Relief to Which County is Entitled*

For the reasons we have assigned, it is apparent that County is entitled to a declaration of its rights and of the District's obligations with respect to the elevated Lagarto road crossing of Lake Corpus Christi. The determination so made requires, of course, a reversal of the judgment of the trial court. For more than a decade, the parties have been before the courts of this state, including three different district judges, three separate courts of civil appeals, and upon three occasions, sought relief in the Supreme Court of Texas. The law has been developed and the case has been tried on its merits.

So, in this posture of the case, we adopt Justice Pope's words: "A nice procedural

9. Railroad Commission of Texas v. Galveston Chamber of Commerce, 105 Tex. 101, 145 S.W. 573, 580 (1912); Railroad Commission of Texas v. Magnolia Pet. Co., 130 Tex. 484, 109 S.W.2d 967, 969 (1937); Farb v. State Banking Board of Texas, 343 S.W.2d 508, 513 (Austin, Tex.Civ.App., 1961, error ref. n. r. e.); Texas State Board of Examiners in Optometry v. Carp, 388 S.W. 2d 409, 414 (Tex.Sup., 1965).

matter is presented with respect to our disposition of this case." [Muro v. Houston Fire & Cas. Ins. Co., 329 S.W.2d 326, 332 (San Antonio, Tex.Civ.App., 1959, error ref. n. r. e.)].

Throughout the entire proceeding which we now have reviewed, the District consistently took the position that the determination of the validity of the order of the Commissioners Court was a question of fact for submission to the jury. The District so persuaded the trial judge, over the objections of the County. When the County sought a judgment disregarding the findings of the jury to Special Issues Nos. 2 and 3, it was the District which again persuaded the trial court to refuse the County's motion. District opposed the County in its effort to have the trial court find as a matter of law that substantial evidence presented upon the trial of the case supported the order under attack; and, District did not urge the trial court to make findings independently of the jury verdict upon the subject. District makes no complaint here of the failure of the court to find the order was not supported by substantial evidence.

■ As a part of its case for the entry of a Declaratory Judgment, County introduced its order of November 26, 1957. The order was regular upon its face and was related to a subject within the exclusive competence and jurisdiction of the Commissioners Court of Live Oak County, Texas. The order was presumptively valid and could be defeated and could be set aside only by proof on the part of the District that it was void as being arbitrary, capricious, unsupported by the substantial evidence, or beyond the jurisdiction of the issuing authority. Cook Drilling Co. v. Gulf Oil Corp., 139 Tex. 80, 161 S.W.2d 1035, 1036 (1942). The burden of proof

upon each of such grounds was upon the District; and, the issue should have been tried under the substantial evidence procedure. Board of Firemen's Relief, etc. v. Marks, 150 Tex. 433, 242 S.W.2d 181, 183, 27 A.L.R.2d 965 (1951). District did not procure the necessary findings to entitle it to judgment.

Instead of procuring a finding, if it could do so, that the order was not supported by the substantial evidence, as it was required to do—and an order which this court could review upon the factual basis thereof—District procured a judgment based upon jury findings which we have held to be utterly insufficient to establish District's right to a judgment. These are matters in which counsel for the District took affirmative action in directing the course of the litigation.

Meanwhile, the County as plaintiff, proceeding with its suit for a declaratory judgment, had pleaded that the expense of construction of the elevator roadway and bridge in accordance with the order of its Commissioners Court would have been at least the sum of $1,037,000.00 at the time the Lagarto bridge and roadway were inundated and "at the present time said expense will be at least the sum of $1,-150,000."

There was testimony offered by both sides as to the cost of such an elevated roadway and bridge, but we do not feel it necessary to include a review of the nature or details thereof. This is so for the reason that the trial court, in accordance with the prayer of the plaintiff County, submitted one issue to the jury which found the cost thereof, and the District has not, in any manner whatsoever (either in the trial court or in this court), attacked such finding.[10]

10. Special Issue No. 1 read: "What do you find from a preponderance of the evidence to have been or to be the reasonable expense for making the change in the Lagarto Road by elevating and constructing the same above the water level of the reservoir when such reservoir is full at 94′ elevation:

(a) When the Wesley E. Seale Dam was completed and the temporary openings in the dam were closed in about April, 1958, and

Under Rule 434, Texas Rules of Civil Procedure, we are required, upon reversal of the judgment of the lower court "to render such judgment or decree as the court below should have rendered, * *." Here, as in the case of Yarbrough v. Booher, 141 Tex. 420, 174 S.W.2d 47, 49, 150 A.L.R. 1369 (1943):

"All facts necessary to the determination of the rights of the parties made by the pleadings in the cause have been presented and passed on in the trial court. The trial court improperly rendered judgment in favor of the tenant [District in our case]. The Court of Civil Appeals properly reversed that judgment. The record shows that the case was fully developed. Under these circumstances it has been 'the uniform practice of the appellate courts in Texas to render upon reversal the judgment that the court below should have rendered and not to remand the case.' * * [citing authorities]."

This we proceed to do, and now enter the following declaration of the rights, duties, and obligations of the parties hereto:

*VIII. Declaration of Rights and Duties*

It is hereby ordered, adjudged, declared, and decreed that the rights, duties, and obligations of the parties hereto with respect to the order of the Commissioners Court of Live Oak County, Texas, dated November 26, 1957, are as follows:

■ A. That portion of said order which is reproduced in the footnote [11] was, upon November 26, 1957, and at all times subsequent thereto and is now a valid and lawful exercise of the powers conferred upon the Commissioners Court of said County and has been and is now binding in all respects upon the District.

■ B. That portion of said order which is reproduced in the footnote [12] was, upon November 26, 1957, and at all times subsequent thereto, invalid and was not a lawful exercise of the powers conferred upon said Commissioners Court and is not now, nor was it ever at any time subsequent to the date of its adoption, binding upon District.

C. When, and only when, the Commissioners Court of Live Oak County, Texas, shall have carried out the determination made in the portion of the order herein quoted in footnote 11 by "changing" the old Lagarto road by elevating the same above the water of the present Lake Corpus Christi along the same route as the old road, District shall pay to County, in Live Oak County, Texas, the complete cost of making such change; provided, however, that the sum which District shall pay to County shall not exceed the sum of Nine Hundred Thirty Thousand ($930,-000.00) Dollars. No interest shall be due upon said sum until thirty days after

(b) At the present time? [May 22, 1968]
Answer by stating the amount, if any."
To which the jury answered:
"(a) $930,000.00
(b) $1,122,000.00 "

11. "It is therefore ordered, adjudged, and decreed by the Commissioners' Court of Live Oak County, Texas, that said Lagarto Road above referred to and effected [sic] by the construction of said Wesley E. Seale Dam and the impounding of water in the new lake created thereby be changed by elevating and raising said road along its present route above the water level of said new lake and the construction of new and higher bridges necessary in connection therewith above the elevation of the water of said new lake; * * * "

12. "It is therefore further ordered, adjudged and decreed by the Commissioners' Court of Live Oak County, Texas, that the actual construction of said elevated road or causeway and higher bridges be not begun nor said present bridges and approaches removed until said Lower Nueces River Water Supply District has paid to this Court sufficient money to defray the cost of such removal and change."

Live Oak County, Texas, shall have completed said roadway *and* shall have demanded payment from District, but interest shall become due and payable at the lawful rate of six (6%) per cent per annum thereafter.

D. All relief sought herein by either party not herein specifically granted is hereby denied.

The disposition which we have made of the appeal makes it unnecessary for us to pass upon County's procedural points arising upon the trial of the cause.

The judgment of the trial court is here and now reversed and judgment rendered for County against District as herein ordered. All costs are adjudged against District.