TRINITY RIVER AUTHORITY OF TEXAS, Appellant,

v.

SAN JACINTO COUNTY, Appellee.

No. 7809.

Court of Civil Appeals of Texas, Beaumont.

March 25, 1976.

Rehearing Denied April 15, 1976.

James A. Bannerot, Austin, for appellant.

Robert F. Atkins, Coldspring, for appellee.

KEITH, Justice.

The appeal is from an order overruling the defendant's plea of privilege to be sued in Tarrant County. San Jacinto County (hereinafter "County") brought this suit seeking a declaratory judgment. The only defendant, our appellant, is Trinity River Authority of Texas (hereinafter "TRA"), created by *Acts 1955, 53rd Leg., Ch. 518, p. 1314, under Texas Const., Art. XVI, § 59.*[1]

Pursuant to authorization conferred in the Act, TRA erected a dam across the Trinity River between San Jacinto and Polk Counties. When the gates of the dam were closed several years ago, the waters of Lake Livingston rose and covered what County claimed was a public road known as "People's Road" (hereinafter simply "road").

In this suit, County sought a declaratory judgment that the road was a public road located on ground necessary for Lake Livingston, formed by the construction by TRA of the dam. County sought a declaration that TRA was required to pay the expense of moving the roadway. *Tex. Water Code Ann. § 5.044(b) (1972).* TRA filed a plea of privilege which, in addition to the usual allegations, averred that it was a governmental agency of the State and a body politic and corporate which could only be sued in Tarrant County "the residence and domicile and seat of government of [TRA], not withstanding any statute which might otherwise appear to establish venue in a county other than the residence of the defendant." TRA also claimed governmental immunity as an agent of the State.

County duly controverted the plea by invoking *subdivisions 14 and 23, Art. 1995, Tex.Rev.Civ.Stat.Ann. (1964).* It further pleaded, in the controverting plea, that TRA had denied that the road was a *public* road; had denied liability for damages because of the inundation and destruction thereof; and that these acts of TRA were in violation of *Texas Const. Art. I, § 17.*

Upon the hearing, County offered correspondence between the County Judge and officers of TRA whereby TRA denied that the road in question was a public road, TRA contending in essence that it had acquired the tract of land over which the road was situated in an eminent domain proceeding (to which County was not a party) and that it had thereby acquired the title to the entire tract, including the road. County also offered oral testimony from persons familiar with the road to the effect that it was recognized by the County and the public generally as a public road; that it was improved and maintained by the County, and that since the flooding, they could

---

1. Section 1 of the Act reads: "By virtue of Article XVI, Section 59 of the Texas Constitution, there is hereby created a conservation and reclamation district to be known as Trinity River Authority of Texas (hereinafter sometimes called the 'Authority') which shall be a governmental agency of the State of Texas and a body politic and corporate." The Act is codified as *Tex.Rev.Civ.Stat.Ann. Art. 8280–188 (1959).*

reach their lands only by sufferance of other individual landowners.

TRA established that its principal office had been established by its Board of Directors as being in Arlington, Tarrant County, where all of the business affairs of TRA were conducted and its officers resided. County established that there was a park superintendent and several minor employees maintaining an office in San Jacinto County where the park facilities of Lake Livingston were located.

■ Although findings of fact and conclusions of law are not required in venue appeals,[2] such were filed in this cause and there are two which are material: (a) that TRA having denied that the road in question was a public road, the County must prove such fact, hence "[t]he title to the road in question is an issue in this lawsuit" and venue was properly shown to be in San Jacinto County under subdivision 14; and, (b) notwithstanding that TRA is not a privately owned entity but is a governmental agency of the State of Texas and a body politic and corporate, and although TRA's principal place of business is in Tarrant County; nevertheless the cause of action arose in San Jacinto County where TRA had an agency or representative, so that venue was properly maintained under subdivision 23.

■ We have a complete record consisting of a statement of facts supported by several written exhibits; consequently, the findings of fact are not conclusive upon appeal. Swanson v. Swanson, 148 Tex. 600, 228 S.W.2d 156, 158 (1950); Anderson v. Anderson, 503 S.W.2d 124, 125 (Tex.Civ. App.—Corpus Christi 1973, no writ). However, there is little, if any, dispute in the facts as shown by our present record.

TRA makes three basic attacks upon the order:

(1) The principal purpose of the suit is to determine rights and obligations under Tex. Water Code Ann. § 5.044(b), and thus is not a suit to establish title to or to recover damages to land within the purview of subdivision 14, Art. 1995, Tex.Rev.Civ.Stat. Ann. It also argues its immunity from suit by County.

(2) TRA is not a privately owned entity and is not subject to the provisions of subdivision 23, Art. 1995, Tex.Rev.Civ.Stat.Ann.; and,

(3) TRA is a resident only of Tarrant County and may be sued only in that county.

TRA had the right and power to inundate public roads as an incident to the construction of Lake Livingston. Water Code § 5.044(b), quoted in the margin, specifically provided such power, making it the duty of the commissioners to change the road when such occurred.[3] However, the same statute placed upon TRA the obligation to "pay the expense of moving the bridge or roadway."

TRA argues that the case of Live Oak County v. Lower Nueces River Water S. Dist., 352 S.W.2d 139 (Tex.Civ.App.—San Antonio 1961, writ dism'd), is dispositive. We disagree. There are many points of similarity in the two cases; but, there is one important point of difference. In Live Oak County, it was undisputed that the Lagarto Road and Bridge were a public road and bridge within contemplation of the statute (then known as Art. 7585, Tex.Rev.Civ.Stat. Ann., and now found and cited as Tex. Water Code Ann. § 5.044 [1972]). Here defendant denies that the road was a "Public" road; it insists that it acquired the road in the eminent domain proceedings to which the County was not a party; it refuses to

2. See: Tex.R.Civ.P. 385(e); Kroger Company v. Warren, 420 S.W.2d 218, 221 (Tex.Civ.App.— Houston [1st Dist.] 1967, no writ); Bryant v. Kimmons, 430 S.W.2d 73, 75 (Tex.Civ.App.— Austin 1968, no writ).

3. Section 5.044(b) reads: "If any public road, highway, or public bridge is · located on the ground necessary for a dam-site, reservoir, or

lake, the commissioners court shall change the road and remove the bridge so that it does not interfere with the construction of the proposed dam, reservoir, or lake. The party desiring to construct the dam, reservoir, or lake shall pay the expense of moving the bridge or roadway."

All emphasis has been supplied unless otherwise indicated.

pay the cost of relocating such road; and, it contends that it is immune from suit.

TRA argues, mistakenly, that the court in the *Live Oak County Case* did not mention the fact that there was no dispute over the fact that the Lagarto Road was a public road. In *Live Oak,* the court noted that the district had "notified" the county to remove the bridge and relocate Lagarto Road, but that the county had refused to do so.[4] A cursory examination of the opinion reveals that the Lagarto Road was a public road.

Here, TRA uses the statute as a one-way street; it contends that it had the right to inundate and destroy the county road; but, it refuses to accept the burden incident to the use of the statute: to pay the cost of its relocation.

 The trial court did not err in determining that a question of title to the road was involved in the litigation. It was and is incumbent upon County, if it is to prevail in the litigation, to establish the road as a public road. Had TRA conceded this fact, the case would be controlled by *Live Oak County,* supra. For, in such instance, the only question for determination would be the cost of relocating the road. See the fourth *Live Oak County Case,* 446 S.W.2d at 27.

The short answer to TRA's contention that County may not prosecute its suit without pleading and proving legislative consent to bring the suit is to be found in *Tex.Water Code Ann. § 51.099,* which reads:

"A district may sue and be sued in the courts of this state in the name of the district by and through its board. All courts shall take judicial notice of the creation of the district and of its boundaries."

4. The history of the dispute and final ending of the case involving the Lagarto Road is to be found in *Live Oak County v. Lower Nueces River Water Sup. Dist.,* 446 S.W.2d 14 (Tex. Civ.App.—Beaumont 1969, writ ref'd n. r. e.). A careful study of the four appellate decisions involving the Lagarto Road shows that there was no dispute between the parties as to the public nature of the road.

See also, *Missouri Pacific R. Co. v. Brownsville Nav. Dist.,* 453 S.W.2d 812 (Tex.1970).[5]

Points one and two are overruled.

Since we are of the opinion that County was entitled to bring and maintain the suit under the provisions of *subdivision 14, Art. 1995, Tex.Rev.Civ.Stat.Ann.,* it is unnecessary for us to determine whether such suit could also be maintained under the provisions of *subdivision 23* of the statute.

The judgment of the trial court is AFFIRMED.

5. We do not reach the question of TRA's liability for torts not within the coverage of the Texas Tort Claims Act, *Art. 6252–19, Tex.Rev. Civ.Stat.Ann. (1970),* and express no opinion thereon.